35 So.2d 553

MARSHALL v. CITY OF MOBILE.

I Div. 327.

Supreme Court of Alabama.

May 27, 1948.

Johnston, McCall & Johnston, of Mobile, for appellant.

648

Harry Seale, of Mobile, for appellee.

GARDNER, Chief Justice.

The City of Mobile, pursuant to the general law (Title 37, § 774 et seq., Code 1940), adopting a zoning ordinance for the municipality, establishing varying districts, among the first of which is known as "A-Residential District," including single family dwellings, schools and colleges, libraries, churches, police and fire department stations, parks, recreation buildings, golf club buildings and accessory uses incident to these matters.

Complainant Robert L. Marshall is the owner of a lot situated at the corner of Dauphin and Pine streets in the said city, fronting 57 feet on Dauphin street with a depth of 116.5 feet along North Pine street, and is located within said "A-Residential District," and upon which he desires to erect a store building. Being unsuccessful with the city authorities in his efforts to obtain a permit complainant filed this bill under what is known as the Declaratory Judgment Act found in Title 7, § 157, Code 1940, to have declared his rights, status or other legal relations under the zoning ordinance above referred to, and to have the ordinance declared invalid as applied to his property.

From the ruling of the court sustaining the demurrer to the bill, as amended, complainant has prosecuted this appeal.

■ It is clear enough in filing the bill the proper remedy has been pursued, a question here not controverted. Title 7, § 156 et seq., Code 1940; Chapman v. City of Troy, 241 Ala. 637, 4 So.2d 1; Morgan v. Board of School Commissioners, 248 Ala. 22, 26 So.2d 108.

Attached to the bill is a diagram showing the block upon which plaintiff's lot is located, and by virtue of its location the insistence is that the ordinance presents an arbitrary classification, and that the restriction against the improvement by the erection of a store building in effect deprives complainant of his property without due process of law in violation of both the state and federal constitutions. Ala.Const. 1901, Art. 1, § 13; U.S.Const. Amend. 14.

■ The City in the exercise of its police power may enter into a comprehensive zoning scheme, the wisdom of which in large part rests in the wise discretion of the municipal authorities. Altho in the beginning there may have been a diversity of opinion, this is now generally accepted by all the courts, both state and federal. See note to Arverne Bay Const. Co. v. Thatcher, 117 A.L.R. 1110; note to State of Washington ex rel. Seattle Title Trust Co. v. Roberge, Superintendent, etc., 86 A.L.R. 654; note to State Bank & Trust Co. v. Wilmette, 96 A.L.R. 1327. In Leary v. Adams, 226 Ala. 472, 147 So. 391, the authorities were rather extensively reviewed with much stress laid upon the leading case of Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016.

■ To enter into any detailed discussion of the authority of the municipality, or the zoning board, would be but a repetition of much of what was said in Leary v. Adams, supra, with which, of course, counsel are well familiar. We there recognized that governmental interference with the lawful use of one's property by zoning ordinance is not unlimited, and such restrictions should bear some substantial relation to the public health, safety, morals, or general welfare, or, as otherwise expressed, the

public convenience or the general prosperity. We also observed that the inclusion of a reasonable margin, to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity, and that in some instances the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. The courts recognize that in the passing of such general zoning ordinance, the municipal authorities act in a legislative capacity, and that their superior opportunity to know and consider the varied and conflicting interests involved, to balance the burdens and the benefits, to lay out zoning districts with a view to the general welfare of the city, render the courts slow to set up their own opinions as against those charged with and in position to rightly perform such duty. Before the courts will interfere, it must be made to appear that such an ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat.

■ In Leary v. Adams, supra, we recognized the strong appeal from the standpoint of financial loss occasioned by the restriction imposed by the ordinance there in question. We answered the argument by following a statement of the North Carolina court in City of Elizabeth City v. Aydlett, 201 N.C. 602, 161 S.E. 78, to the effect that financial loss is not the test. If the question is fairly debatable, the court will not substitute its judgment for that of legislative body which creates the ordinance. We also noted an extract from Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 145, 60 L.Ed. 348, Ann. Cas.1917B, 927, as follows: "It is to be remembered that we are dealing with one of the most essential powers of government,—one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily."

■ As we construe the amended bill in the instant case complainant applied to the building inspector of the City of Mobile for a permit to construct a store building on the above described real es-

tate. This permit was denied upon the theory that the property was located within the "A-Residential District." Complainant then appealed to the Board of Commissioners of the city, which refused the application for like reason. As we interpret paragraph 7 of the amended bill, complainant sought to have the ordinance amended by the Board of Commissioners, which application came on for hearing at a regular session of the Board of Commissioners of the city, and upon said hearing the permit was again denied, whereupon the application was withdrawn. Construing the averments of the amended bill against the pleader, we may assume that the application for a change in the ordinance was duly heard after notice given pursuant to §§ 778, 779, Title 37, Code 1940. Upon this hearing a petition was presented opposing the application.

The theory upon which relief is sought is twofold, as we understand it. First, that due to the surrounding facts and circumstances concerning the particular block within which complainant's lot is located, the zoning ordinance classifying this particular block as "A-Residential District" is discriminatory and arbitrary and of consequence is void. In the second place, that if this position is not sustained that it is rendered invalid by the arbitrary method by which the zoning ordinance is enforced.

As to the first contention: complainant rests upon the theory that in this particular section of the city there is much business activity, that the property in the immediate vicinity of his lot is extensively given over to business and commercial use, and that he is precluded from such business use of his own property, which deprives him of his constitutional rights. The amended bill states in detail the location of the various businesses which are in close proximity to the appellant's property, and the diagram attached to the bill largely sustains these averments. In the block in which complainant's property is located, near the center is a small lot devoted to the business of a ladies' ready-to-wear shop, and in the opposite corner is the office of a physician. As to the physician's office, it was held by the Florida court in Yocum, Chief of Police v. Feld, 129 Fla. 764, 176 So. 753, that the operation of the profession of a physician does not come within the definition of a trade or industry within the zoning ordinance relating to trades and industries. There is nothing in the amended bill which would in any way indicate that the physician's office on the corner of this block opposite to that of appellant's property would in any manner disturb the block as a residential area. The ladies' ready-to-wear shop is, of course business to a small extent; but looking at this diagram we are fully persuaded that counsel for the City is correct in his estimate that at least 97 per cent of the block is retained for residential purposes.

Other courts have presented similar situations in which the holdings were to the effect that the mere fact the residential territory was in proximity to a vicinity largely devoted to business purposes does not of itself render the ordinance invalid. Every intendment is to be made in favor of the zoning ordinance and the matter was largely in the legislative discretion of the municipal authorities. There must somewhere be a line drawn, and evidently the Commissioners were impressed with the thought that this further encroachment by business upon this residential area would in the end result in the abandonment of the block for such a purpose. And it is evident that in their opinion this would not be a proper step to take. Biscay v. City of Burlingame, 127 Cal.App. 213, 15 P.2d 784; Smith v. Collison, 119 Cal.App. 180, 6 P.2d 277; City of Aurora v. Burns, 319 Ill. 84, 149 N.E. 784; City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923.

Upon this question of discrimination counsel for complainant lay much stress upon Yick Wo v. Hopkins, 118 U.S. 356; 6 S. Ct. 1064, 1073, 30 L.Ed. 220. There the court found that the ordinance as passed was aimed directly at those in the laundry business of the Chinese race. Upon the question of discrimination the court observed: "The fact of this discrimination is admitted. No reason for it is shown, and the conclusion cannot be resisted that no reason for it exists except hostility to the race and nationality to which the

petitioners belong, and which, in the eye of the law, is not justified." The court further observed that the ordinance was administered with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad provisions of the Fourteenth Amendment to the U. S. Constitution. A reading of that authority clearly discloses its dissimilarity to the bill here considered. Here no one contends any international discrimination against this complainant, or any one else, or that the law is being applied and administered by public authority with "an evil eye and an unequal hand," to use the language of the Yick Wo case, supra. We are fully persuaded, therefore, that the first contention is untenable.

As to the second contention we feel that little need be said. As we construe the bill, it charges that the ordinance, even though valid, is being administered in a discriminatory and arbitrary manner as to come within the influence of our authorities which invalidate an ordinance which requires the consent of the majority of the property owners before a building permit is to be granted. City Council of Montgomery v. West, 149 Ala. 311, 42 So. 1000, 9 L.R.A.,N.S., 659, 123 Am.St.Rep. 33, 13 Ann.Cas. 651; Longshore v. City of Montgomery, 22 Ala.App. 620, 119 So. 599, certiorari denied 218 Ala. 597, 119 So. 601; Gillette v. Tyson, 219 Ala. 511, 122 So. 830. This argument is based upon the theory that when complainant applied for a revision of the ordinance so as to remove this block from the "A-Residential District," or so as to remove his property from its restriction, that the Commissioners had a public hearing at which a petition was considered opposing his application. As we gather from the statute, the purpose of a public hearing, after due advertisement, is to give the interested citizens an opportunity to enter their objections, and that is what the Commissioners did, as we interpret the amended bill. We are unwilling to say that the city Commissioners acted in an arbitrary manner, if after a full hearing they acceded to the wishes of a majority of the citizens affected by the proposed change. The authorities noted in complainant's brief do not lead to a contrary conclusion.

Here the city Commission is acting in the exercise of a legislative function and with a wide degree of discretion. We do not think, therefore, that the second contention can be sustained.

It results as our conclusion that the amended bill did not present a case for relief and that the demurrer thereto was properly sustained. The decree will accordingly be here affirmed. It is so ordered.

Affirmed.

BROWN, LAWSON, and STAKELY, JJ., concur.