173 So.2d 67

**Claude H. GRAYSON et al.**

**v.**

**CITY OF BIRMINGHAM.**

**6 Div. 949.**

Supreme Court of Alabama.

Nov. 14, 1963.

Rehearing Denied April 8, 1965.

J. M. Breckenridge, Birmingham, for appellee.

Cabaniss & Johnston, Lucien D. Gardner, Jr., and Robt. C. Hudson, Birmingham, for appellants.

J. Thomas King and David D. Wininger, Birmingham, amici curiae.

PER CURIAM.

Appellants filed their petition in the Circuit Court of Jefferson County, in equity, for a declaratory decree in determination of their rights to use twenty lots of their planned subdivision for commercial purposes that are nonconforming to a zoning ordinance of the City of Birmingham. As an incident to the relief sought, they also prayed for "a mandatory and restraining injunction" against respondent, requiring it to show commercial zoning of such lots upon its zoning and other records. From a decree denying relief, complainants appeal.

It appears, from the pleadings and evidence, that complainants are engaged in the business of buying undeveloped tracts of land, platting them into lots, grading and paving streets, putting in utilities and making other improvements, and selling the lots free of building structures of any kind.

On March 5, 1954, complainants acquired 168 acres of land in furtherance of their business activities. The property so acquired was not, on the date of purchase, within the corporate limits of the City of Birmingham, but was within its police jurisdiction. The property, at the time, was subject to the zoning authority of Jefferson County. Act No. 344, General Acts 1947, page 217, approved August 15, 1947. It was then zoned "A-1 Agricultural" by the County Commission.

The plans for development, when completed, consisted of approximately 376 residential lots and 20 lots for commercial use. It was planned to develop the entire tract in three sectors. The first sector was to consist of approximately one third of the tract.

Pursuant to their plans, an engineer was employed, plat prepared showing 20 commercial lots and approximately 178 residential lots, all comprising the first sector. These plans were submitted to the Jefferson County Planning and Zoning Commission for its approval, as required by Act No. 344, supra. The Commission approved the plat on June 10, 1954. It was then filed for record on September 22, 1954.

Following this approval, an appeal was taken by a dissatisfied neighboring property owner. This appeal was denied by the Board of Zoning Adjustment and the commercial zoning was upheld.

The plans of appellants for development of this property did not become effective until March 1, 1955, when the County Commission of Jefferson County adopted an appropriate resolution authorizing the change from agricultural to commercial and residential use as shown on the plan.

The cost of installations in preparing the designated area for commercial use is roughly, without assuring accuracy, as follows: Paving streets upon which the business lots abutted, $1,655.60; suitable water pipes, extra costs, if changed, $160.00; loss of engineering fees, $420.00; additional cost of grading, $99.75; storm sewers, $600.00; leveling lots, $129.50; clearing lots for commercial use, $425.00; and running laterals to lots, $27.75; total—$3,517.60.

On October 25, 1955, the entire tract, with other areas, was annexed to and became a part of respondent, City of Birmingham.

On October 16, 1956, after publishing notice as required by law, respondent, without actual notice to appellants, adopted an ordinance rezoning the commercial area to "A Residential."

At this time, development of the first sector, as laid out in the plat, had been completed; 178 lots had been sold and about 150 houses constructed. The commercial area had been developed in the manner and at the approximate cost above noted.

After two applications, one with the Zoning Board of respondent and the other with the City Commission, to rezone the area for commercial use, both of which were denied, this suit was filed.

Appellants contend that on October 16, 1956, the 20 commercial lots had a market value of approximately $100.00 per front foot greater than their value as zoned for residential purposes; and from $125.00 to $175.00 per front foot greater than their value as residential property at the time of the trial. The total frontage is 1,000 feet.

Also, the contention of appellants is that they have a vested interest in the 20 lots that were rezoned by appellee for residential purpose, and that such rezoning deprives them of that right without due process of law and denies them the equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States.

They further contend that the installations made, at the expense aforementioned, established in them a vested right which is not the subject of impairment or destruction by appellee's ordinance; and that they will suffer irreparable financial loss entailed by a decrease in the market value of the lots if the zoning ordinance, as amended, prevails.

In enacting the zoning ordinance, the county commission was engaged in a legislative function. Ball v. Jones, 272 Ala. 305, 132 So.2d 120(5). It was not engaged in contracting. In consequence, the zoning ordinance of the county did not result in a contract between the county and appellants, thereby creating a vested right that was free from the action of appellee in rezoning the area. 101 C.J.S.Zoning § 89, page 840; Marren v. Gamble, 237 N.C. 680, 75 S.E.2d 880.

But vested rights are not dependent exclusively on contractual relations. It is often a difficult task "to trace accurately the boundary line between the domains of authorized and prohibited legislation on this subject." Any amendment to a zoning ordinance, as here, must stand or fall on vested rights, which, in the absence of a contract, depend for their existence on equitable fairness, both to the property owner and to the general public.

Thus, in Brady v. City of Keene, 90 N.H. 99, 4 A.2d 658, 660, where it appeared that the city had been expressly granted power to amend or repeal its zoning ordinance, the court said:

"* * * But this does not mean that the power of amendment is unlimited. This power, by force of the statute which creates it, must be exercised reasonably, and its exercise is also limited by the general rule that governmental action under the police power may not be arbitrary or unreasonably interfere with constitutional rights." (Citation Omitted.)

We are quite aware that some courts, in cases cited by appellants, determine the existence of vested rights in property which has been made the subject of zoning amendments on the property owner's substantial change of position, financial investments, or permits granted, all relating to structures built, initiated, or authorized on the rezoned area.

Such changes, investments, and permits, relating as they do to structures initiated or completed, are made the criteria of hardships imposed on the property owner and judicially recognized to sustain the claims of vested rights. The facts in no two cases are the same.

Here we are dealing with naked lots, which are without structural initiation thereon, no building permit granted, and the owners admittedly have no intention of building on them. The improvements were made only to facilitate their sale and use for business purposes.

We do not think that under our law the financial loss to appellants, occasioned by the depreciation of the value of

the lots, caused by the change to residential use, mandated under the ordinance, could be used as a criterion in determining the issue of vested rights in the property. We quote:

"Petitioner presents a strong appeal from the standpoint of financial loss occasioned by this restriction. But, as said by the North Carolina court in City of Elizabeth City v. Aydlett, 201 N.C. 602, 161 S.E. 78, 81: 'Financial loss is not the test; the question is whether the scheme is sound, and the classification fair. If the question is fairly debatable, the court will not substitute its judgment for that of legislative body which creates the ordinance.'

"And answering a like argument in Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 145, 60 L.Ed. 348, Ann. Cas. 1917B, 927, the court said: 'It is to be remembered that we are dealing with one of the most essential powers of government,—one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily.' And in Chicago, B. & Q. Ry. Co. v. Illinois ex rel. Drainage Com'rs, 200 U.S. 561, 26 S.Ct. 341, 350, 50 L.Ed. 596, 4 Ann.Cas. 1175, is the observation that, 'if the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution.'" Leary v. Adams, 226 Ala. 472, 477, 147 So. 391, 395.

See also: Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553(8).

The above pronouncement applies with equal force to the action of appellee in rezoning the controverted area.

So we have as a determining factor in favor of appellants, their investment of an amount not in excess of $3,600.00 in adapting the lots for commercial use. This investment, standing alone, without weighing public welfare, no construction of buildings having been authorized or started, might serve to establish appellants' contention that they have acquired a vested right in the property and that the rezoning ordinance is an invasion of such constitutional right.

In the case of Ball v. Jones, supra, referring to enactment of an amendment to a zoning ordinance, we observed that such enactments are presumed to be constitutionally valid and this presumption prevails until it appears beyond a reasonable doubt that the enactment under consideration is invalid or obnoxious to the expressed terms of the Constitution or to the necessary implication afforded, or flowing from, such expressed provisions.

Further, we observed in Marshall v. City of Mobile, supra, 250 Ala. at page 649, 35 So.2d at page 555:

" * * * governmental interference with the lawful use of one's property by zoning ordinance is not unlimited, and such restrictions should bear some substantial relation to the public health, safety, morals, or general welfare, or, as otherwise expressed, the public convenience or the general prosperity. * * * The courts recognize that * * * the municipal authorities act in a legislative capacity, and that their superior opportunity to know and consider the varied and conflicting interests involved, to balance the burdens and the benefits * * * render the courts slow to set up their own opinions as against those charged with and in position to rightly perform such duty. Before the courts will interfere, it must be made to appear that such an ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat."

Although we have said in Ball v. Jones, supra, that the wisdom or unwisdom of a

zoning ordinance is addressed to legislative authority of the municipality enacting the ordinance, the courts are not precluded from reviewing such action to determine if the ordinance is an arbitrary fiat so as to render it unconstitutional.

There appears in the record before us the testimony of Mr. John Steinichen, Planning Director for appellee, and an expert in the field of planning, as follows:

"A. With the establishment of commercial facilities on these locations should not be, first of all, considered to be a shopping center as such. We have a number of lots involved which would be subject to having on each one of those lots a separate commercial enterprise with the curbing cut and access point on parking area, which would more than likely be very limited, because of the small size of the lots, and the fact that these lots were originally, or at least appear to me to be designed for residential purposes.

"The commercial area, the area under consideration, lies on both sides of a feeder street into this fairly large subdivision area.

*     *     *     *     *     *

"A. A feeder street, or a connector street, a street that acts like—analogy would be a limb on a tree with branches out, leaves further out on the limb. A large part of the traffic that would go into this residential subdivision would use Magnolia—Azalea Way, which is on either side, which the sub-area lies. At the point where this Azalea Way intersects with a major street known as Five Mile Road with a substantial amount of traffic, automobile traffic in and out of the residential area coming by this location, it would conflict with any turning movement in and out of these access points at each one of these lots, which would be a potential.

"Also, a school, L. M. Smith School, it's just to the West of Five Mile Road, that is across from Five Mile Road from this area, almost directly across from the intersection of Azalea Way and Five Mile Road. The same reasoning would apply to school children having to walk by these commercial sites on the way to and from school at a point of substantial amount of more than normal vehicular congestion.

"The configuration, or the boundaries of the area, the outside boundaries of it, offers a maximum exposure to the surrounding residential area. There would be 2, 3, 4, 5 or 6 residences that would be adjacent to this commercial site. It could not have been designed any better in order to give the maximum exposure to the usual conflict that arises between commercial property and adjoining residential property.

*     *     *     *     *     *

"A. That is the incompatible land use, it affects that lighting, traffic, appearance of the buildings that are commercial would have adjoining residences. It is my recollection that there is no sidewalk at this location either, even though the street is paved to a little bit wider than minimum residential street."

While it appears that the school building was not erected nor the school in operation at the time, we conclude from the evidence that when the ordinance was enacted the commercial area created potential traffic hazards, not related to the school, that impinged on public safety, with the possibility that it would expose school children to traffic, as now appears, should a school plant be erected and put in operation in proximity to this commercial zone.

The forfeiture of appellants' investment is of minor weight and importance in comparison with the duty on the part of respondent to foresee the traffic and pass adequate zoning regulations designed to protect pedestrians and motorists in this area from loss of life or serious injury.

In the light of our holding that the establishment of vested rights in the appellants to the naked lots here under consideration is also dependent on the reasonable necessity for protecting and promoting the health, safety, morals, and general welfare of the public, we hold that the appellants, under the circumstances here presented, did not acquire a vested right to the lots in question so as to make them immune from the zoning ordinance here under attack.

We deem it unnecessary to discuss other factors which involve some property owners who purchased lots after the zoning amendment was passed and on belief that the entire project was zoned for residential purposes.

■ The contention of the appellants, that the decree of the trial court should be reversed because the trial judge considered certain evidence relative to an alleged immaterial theory of estoppel advanced by respondent, is without merit. Where the decree correctly determines the equities of the case, as here, reasons upon which the trial court proceeded are unimportant, and the case will be affirmed. Andrews v. Sullivan, 260 Ala. 291, 69 So.2d 870(7).

We think the trial court correctly decided this case. The decree should be and is affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN, and HARWOOD, JJ., concur.