231 So.2d 122

**Wilbur ALLEN and City of Birmingham, a Municipal Corporation, et al.**

**v.**

**George D. AXFORD et al.**

**6 Div. 516.**

Supreme Court of Alabama.

Nov. 7, 1969.

Rehearing Denied Jan. 22, 1970.

Wingo, Bibb, Foster & Conwell and Edwin A. Strickland, Birmingham, for Wilbur Allen.

William A. Thompson, Birmingham, for City of Birmingham.

Barber & Johnston, Birmingham, for Union Oil Co. of California (Pure Oil Division).

Rogers, Howard, Redden & Mills, Birmingham, for appellees.

HARWOOD, Justice.

In the proceedings below the complainants, appellees here, filed a bill in equity seeking a declaratory judgment as to the validity of an ordinance passed by the council of the City of Birmingham. The effect of the ordinance in question, No. 398–G, was to amend the zoning ordinance of the City of Birmingham so as to change the classification of two lots from Class R–6 (residential) to Class B–2 (business).

The lots in question are contiguous, and face Montclair Avenue on the north. Orig-

inally they were parts of different subdivisions which had been mapped and platted, and the respective plats filed in the office of the Probate Judge of Jefferson County.

The lots in question are first, Lot 1 in Block 1 of Birmingham Realty Company's 5th Addition to Birmingham known as Chestnut Hills. The Realty Company recorded its plat of this subdivision on 17 May 1913, and second, Lot 3, Block 720 of the Elyton Land Company's Survey of Birmingham.

For brevity, the lots will hereinafter be referred to as Lot 1 and Lot 3.

Lot 1 has a north frontage on Clairmont Avenue of 35.7 feet and has a depth of 192.4 feet. Its eastern side runs along Thirty-First Street. In other words, Lot 1 constitutes the southwest corner of the intersection of Clairmont Avenue and Thirty-First Street.

Lot 3 fronts 100 feet on Clairmont Avenue and has a depth of 192.35 feet. Its eastern boundary line is the west boundary line of Lot 1.

On 26 January 1927, the Birmingham Realty Company conveyed Lot 1 to Mary A. T. McGeever. This deed contained the following provision:

"It is understood, agreed and made a part of the consideration for the sale and purchase of the above described property that in the event said purchaser builds an apartment on that part of Lot Numbered Four (4) in Block Numbered Seven Hundred and Twenty (720) now owned by her, no part of said apartment shall be built or constructed on the above described lot hereby sold, but should said McGeever elect to improve said Lot Numbered Four (4) in Block Numbered Seven Hundred and Twenty (720) with separate detached residences, it is understood she may build as many as four (4) detached residences, fronting on Thirty-first Street, on the property herein sold, *it being the true intent and purpose of this restriction that nothing but detached residences may be built on the property herein conveyed, * * *"* (Emphasis ours.)

On 31 January 1927, Mary A. T. McGeever and husband conveyed Lot 1, and the east one-half of Lot 3 to V. A. Garnett. This deed contained the same restrictive provision as set out above.

On 28 October 1964, Jessie Katherine Garnett Early, whom we presume acquired the property as heir or devisee of V. A. Garnett, conveyed Lot 1 and Lot 3 to Fred Curtis.

The restrictions appearing in the Birmingham Realty Company and the V. A. Garnett deeds were not incorporated in this deed.

On 17 January 1966, Fred Curtis and wife conveyed Lot 1 and Lot 3 to Wilbur K. Allen. Again, no restrictive provisions were set out in this deed.

On 30 September 1964, the Birmingham Realty Company executed a document purporting to "dispense with and eliminate" the restriction set out in its deed to Mary A. T. McGeever, insofar as it had the power to do so.

As before stated, the Birmingham Realty Company filed its plat of Chestnut Hills in 1913. There are some 164 lots in this subdivision. Eighty-one of the deeds executed by the Realty Company to lots in Chestnut Hills contained restrictions limiting the use of said lots to residential purposes. Twenty-five deeds are to fractional portions of lots, and in most instances the purchaser was the owner of a contiguous lot carrying the residential restriction. Twelve lots in Chestnut Hills were sold to churches.

From its inception, Chestnut Hills was developed as a residential subdivision. The Birmingham Realty Company advertised it as devoted exclusively to residences. It was built up through the years as an exclusively residential subdivision, and no commercial structures have been built in the original development.

Under the original zoning plan and under this plan as revised in 1961, Clairmont Avenue has been the dividing line between residential and business zones. The north side of Clairmont Avenue is zoned for business, and the entire area in the vicinity of Chestnut Hills subdivision on the south side of Clairmont Avenue is zoned residential except for a one block area four blocks west of the subject property.

Several requests for reclassification of the property in question have been made in recent years without success. Such a request for reclassification to permit the use of the property in question for a filling station was made in 1965, and unanimously denied by the City Council on 31 August 1965.

On 25 May 1966, the appellant filed an application for rezoning the subject property from residential to business. The Planning and Zoning Department ruled unanimously against permitting the rezoning because, (1) the change would not be well related to surrounding uses; it would be an isolated "spot" zone, (2) the change would be out of scale with the needs of land use in the area, (3) the change would adversely affect living conditions and property values in the area, (4) the change is contrary to the Future Land Use Plan which designates the subject property for high density residential use as presently zoned.

The staff also found there were abundant sites, including vacant lots, in the neighborhood business district more suitable than the lots in question for filling stations.

Despite the recommendation of the staff of the Planning and Zoning Department, the Zoning Advisory Committee recommended to the City Council that the subject property be rezoned from residential to business on the basis that such change would "facilitate the highest and best use of the property."

Following a hearing, the City Council granted the request to rezone by enacting Ordinance 398–G.

Following the enactment of Ordinance 398–G, the appellees filed their bill for a declaratory judgment proceedings seeking to have Ordinance 398–G declared invalid, and that an injunction be issued against Wilbur Allen and Union Oil Company enjoining them from improving the subject property under the authority of said ordinance. The bill also sought a declaration of the rights of the parties as affected by the restrictive provisions in the deed from Birmingham Realty Company to Mary A. T. McGeever.

The respondents filed respective demurrers to the bill, which were overruled, and then filed their respective answers, and the cause came on for hearing.

The hearing was quite lengthy, with a large number of witnesses testifying. Some twelve depositions were introduced and 200 exhibits were received in evidence. Altogether, the record is over 900 pages.

After completion of the hearing the Chancellor entered a decree wherein he found:

1. Ordinance 398–G is arbitrary and unreasonable in view of all the facts and circumstances attendant unto the cause.

2. That Ordinance 398–G violates the General Zoning Ordinance of the City of Birmingham which provides that the zoning of any property subject to a restrictive covenant shall be such as is allowed by the covenant if such covenant is more limited in its permitted uses than the General Zoning Ordinance.

3. The restriction in the deed from Birmingham Realty Company to Mary A. T. McGeever is a covenant running with the land and inuring to the benefit of the complainants and other owners of property located in the Birmingham Realty Company's 5th Addition to the City of Birmingham (Chestnut Hills Subdivision).

The Chancellor thereupon decreed:

1. Ordinance 398–G was invalid and void.

2. The City of Birmingham was enjoined from issuing any building permits or any authority for the improvement of the property in question under the authority of Ordinance 398–G.

3. The respondents Wilbur Allen and Union Oil Company were enjoined from constructing improvements on the subject property which are not permitted under the Zoning Ordinance of the City of Birmingham in Class R 6 (residential) zones, and both of the above named respondents were enjoined from violating the restrictions contained in the deed from Birmingham Realty Company to Mary A. T. McGeever, and from constructing any improvements on Lot 1, Block 1, other than detached residences, and were ordered to remove from said property any improvements placed thereon which are not detached residences or components thereof.

All of the respondents have perfected their separate appeals from this decree, and have made separate, though identical, assignments of error. A joint brief has been filed in behalf of the respondents-appellants.

In brief counsel for appellants, in a preamble under the "Argument" section, state that for simplicity the brief (argument) has been divided into four sections. The first two sections present arguments "pertinent to the findings and order in the final decree as they relate to Zoning Ordinance No. 398–G of the City of Birmingham. The last two divisions present appellants' arguments concerning the findings and order of the final decree holding that the restrictions affecting part of the subject property, to-wit Lot 1, Block 1, was a covenant running with the land enforceable by appellants and other property owners in Birmingham Realty Company's 5th Addition."

Counsel for appellants have divided the argument portion of their brief into four sections—A, B, C, and D.

Under each letter they have listed certain propositions of law, and underneath these designated propositions of law they have listed in parentheses, certain assignments of error.

As illustrative, the first portion of their argument is set up as follows:

A.

Propositions of Law 1, 2, and 3 (Assignments of Error I, IV, V, VI, and VII)

There then follows an argument, but nowhere in the argument is any specific assignment of error mentioned. Clearly all of the above assignments are argued in bulk.

Assignment of error I is to the effect that the court erred in holding Ordinance 398–G to be arbitrary and unreasonable.

Assignment of error IV asserts that the court erred in enjoining the City of Birmingham from issuing a building permit or authority to improve the subject property under the authority of Ordinance 398–G.

Assignment of error V asserts error in that portion of the decree enjoining the respondents Union Oil Company and Wilbur Allen from erecting improvements on the subject property which are not permitted under the Zoning Ordinance of the City of Birmingham, and from violating the restrictions contained in the deed from the Birmingham Realty Company and from erecting any improvements on Lot 1, Block 1, other than detached residences.

Assignment of error VI asserts error on the part of the court in rendering a decree in favor of the complainants and against the respondents.

Assignment of error VII asserts the court erred in decreeing that Ordinance 398–G was invalid and void.

▮ The thrust of appellants' argument under Division A can only be interpreted as questioning the sufficiency of the evidence to support the court's decree as a whole, or some aspect of it. Counsel for appellants set forth the principle well established in our decisions that if the question of zoning or rezoning is fairly debatable, a court will not substitute its judgment for that of the municipal government body acting in legislative capacity. See Episcopal Foundation of Jefferson County v. Williams et al., 281 Ala. 363, 202 So.2d 726; Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388. However, the right of a governing body to enact zoning ordinances is not unlimited, and the ordinance must bear some substantial relation to the public health, safety, morals, general welfare, and general convenience. Grayson v. City of Birmingham, 277 Ala. 522, 173 So.2d 67; Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553.

Counsel, in the course of argument under this section of appellants' brief, lists in eleven paragraphs relevant facts which they assert stand without dispute. These undisputed facts so listed are not determinative as to whether the court's finding that the act of the City Council was arbitrary and capricious. Counsel assert that "a review of the evidence as a whole * * shows that a rezoning of the property * * * for business use was clearly justified and that the property should have been so zoned." Counsel then observes that this contention will be disputed by the appellees, which of course was done in appellees' brief.

The finding of the court that the action of the City Council was arbitrary and capricious in passing Ordinance 398–G, and in decreeing the ordinance invalid, depends upon the sufficiency of the facts established in the court below, and the application of the developed legal doctrines to these facts.

Counsel for appellee have strenuously brought to our attention the proposition that while counsel for appellants have sought to question the sufficiency of the evidence to support the decree, there is no condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the testimony of the witness clearly and concisely.

▮ Such recitation of the testimony of each witness is necessary where the sufficiency of the evidence to support a decree or judgment is the basis of an assignment of error. Supreme Court Rule 9. By this omission the appellants have waived their assignments going to the sufficiency of the evidence to support the decree and the finding that the action of the City Council in passing Ordinance 398–G was capricious and arbitrary, and decreeing the ordinance to be invalid. (See Employers Insurance Co. of Alabama v. Watkins, 280 Ala. 681, 198 So.2d 258, for a full discussion, with numerous authorities cited as to the consequences of failing to comply with Supreme Court Rule 9, where the testimony of each witness is not set forth in narrative form in the "Statement of Facts" in brief, and the sufficiency of the evidence to support a decree is assigned as error.)

We perforce pretermit consideration of the assignments of error sought to be argued under Subdivision A of appellants' brief.

Under Division C of the argument portion of their brief counsel for appellants have listed "Propositions of Law 7 and 8," and beneath have parenthetically listed "Assignments of Error III, V, and VI."

Assignment of error III asserts that the court erred in decreeing that the restriction contained in the deed from Birmingham Realty Company to Mary A. T. McGeever conveying Lot 1, Block 1 of their Chestnut Hills development was a covenant running with Lot 1 and inuring to

the benefit of the appellees and other owners of lots within the subdivision.

Assignments of error V and VI, set out above are peripheral to and sufficiently related to assignment of error III to permit an argument in bulk as to these assignments.

Counsel for appellant first analyze and dissect sentence by sentence the restrictive agreement in the McGeever deed, other than the last clause, and reach the conclusion that the restrictive agreement constituted nothing more than a personal covenant between the Birmingham Realty Company and Mary A. T. McGeever, and was obviously intended solely for the benefit of the Birmingham Realty Company.

Such argument overlooks the clear import of the last clause of the restrictive covenant that "nothing but detached residences may be built on the property herein conveyed." (Lot 1, Block 1, etc.)

Counsel further argue that the absence of such words or phrases in the covenant as "perpetual," "always," "heirs and assigns," and "running with the land," reinforces their contention that the restrictive covenant was not one running with the land. This contention finds no support in our cases.

■ The paramount factor in determining whether a covenant is one running with the land is the intent of the parties. White v. Harrison, 202 Ala. 623, 81 So. 565; Webb v. Jones, 163 Ala. 637, 50 So. 887. In determining this a court first looks to the instrument, and if this intent be not clear from the face of the instrument, the court will look to surrounding circumstances. Water Works and Sanitary Sewer Board of City of Montgomery v. Campbell, 267 Ala. 561, 103 So.2d 165; Moseby v. Roche, 233 Ala. 280, 171 So. 351; Morris & Morris v. Tuskaloosa Mfg. Co., 83 Ala. 565, 3 So. 689.

In McMahon v. Williams, 79 Ala. 288, it is stated:

"One of the most practical tests, supported by common sense and common business experience, is, whether the restriction imposed by the grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or conveyed to another. If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises."

In Webb v. Jones, supra, the observation is made that:

If the provision was reserved for the benefit of the adjacent land retained, and not merely for personal advantage, covenants are said to touch and concern. (the land)

■ A restriction having attached and become appendant to the land, it runs with the land automatically whether such words as "heirs and assigns," "perpetual," "running with the land," be used or not used.

The background of the Birmingham Realty Company's development of Chestnut Hills dictates the conclusion that the restriction placed in the McGeever deed that only a detached residence could be built on Lot 1, was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever it might be. Further, such restriction was of a nature to operate as an inducement to purchasers seeking a purely residential lot.

■ We hold that the restrictive covenant in the McGeever deed was a covenant running with Lot 1, and the lower court was correct in so concluding.

■ It is also firmly established by our decisions that where the owner of a tract of land adopts a general scheme for its development, divides it into lots, and con-

veys the lots with restrictions as to use, such restrictions create equitable easements in favor of the owners of the several lots which may be enforced in equity by any one of such owners. Hall v. Gulledge, 274 Ala. 105, 145 So.2d 794; Pugh v. Whittle, 240 Ala. 503, 199 So. 851; Scheuer v. Britt, 218 Ala. 270, 118 So. 658; McMahon v. Williams, 79 Ala. 288.

█ The instrument executed by the Birmingham Realty Company in 1964, some 37 years after it had parted with title, purporting to dispense with and eliminate the restrictions in the McGeever deed, was of course of no legal effect. Thrasher v. Bear, 239 Ala. 438, 195 So. 441; Virgin v. Garrett, 233 Ala. 34, 169 So. 711.

█ An additional reason compelling a conclusion that Ordinance 398–G is invalid insofar as Lot 1 is concerned, is presented in a constitutional aspect.

The restrictive covenant in the original deed from the Birmingham Realty Company to Mary A. T. McGeever was a matter of contract between the grantor and grantee. It is our conclusion as shown above, that the contract between the parties created a covenant running with the land. The obligation of this contract cannot be impaired by a law enacted by the state. Article 1, Sec. 10, Constitution of the United States; Article 1, Sec. 21, Constitution of Alabama 1901. For a full discussion of this principle see Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629.

█ A municipality being a creature of the state cannot be deemed to have and exercise more power in the legislative field than does its creator. Town of Boaz v. Jenkins et al., 32 Ala.App. 299, 25 So.2d 394.

Indeed, Article XXVIII (Interpretation of Chapter) of the General Zoning Ordinance of the City of Birmingham, reflects this principle in the following provisions in said Article:

"In interpretating and applying the provisions of this Chapter they shall be held to be minimum requirements * * Where any easements, covenants, or agreements impose greater restrictions upon the use of a building or upon the height, bulk, or size of a building * * * than are required under the regulations of this Chapter, *such provisions shall govern.*" (Emphasis ours.)

█ Counsel for appellants next argue that even though the restrictions in the deed of Birmingham Realty Company to Mrs. McGeever be deemed a covenant running with the land, such covenant should not be enforced because of the change in the character of the neighborhood. Counsel alludes to the heavy traffic on Clairmont Avenue since 1927, with the accompanying increase in noise resulting therefrom, all of which now tend to make Lot 1 undesirable as a residential lot.

In a multitude of cases from other jurisdictions this change in the character of a neighborhood as a basis for not enforcing a covenant limiting the use of a lot has been considered. In many of these cases relief from the covenant has been granted under the particular facts presented. See 4 A.L.R.2d 1111; 85 A.L.R. 985, 54 A.L.R. 813.

An apt statement of the standards to be applied by a court when presented with such question is set forth in Taylor Avenue Improvement Ass'n v. Detroit Trust Company, 283 Mich. 304, 278 N.W. 75, as follows:

"Relief from very onerous restrictions because of a change in the character of the neighborhood will be granted only if it can be done without causing any damage to others who have purchased their property in the restricted area in reliance on the restrictions. We have neither the disposition nor the right to lift or modify restrictions at the expense of, or to the damage of, any other property holder in the subdivision. The query

is, whether these restrictions can be modified in such a manner so that in this particular instance no damage is done to the residents of Taylor Avenue."

While if the question of zoning or rezoning is fairly debatable, a court will not substitute its judgment for that of a municipal governing body acting in a legislative capacity, we consider that the question of whether a covenant running with the land shall be declared unenforcible because of change in the character of the neighborhood to be a question of law to be judicially resolved, and not a legislative matter committed largely to the legislative wisdom of a governing body.

Implicit in the Chancellor's decree is an adjudication that the character of Chestnut Hills subdivision had not changed to an extent justifying nonenforcement of the covenant running with Lot 1.

In support of this conclusion, counsel for appellees point out that from 1913, when first developed, Chestnut Hills has kept its residential character with no commercial development. As late as 1962, Birmingham Realty Company was still selling lots with residential use covenants. The covenants in deeds to many of the lots sold limited their use to residences. Such restrictions were beneficial to the Realty Company because it induced the sale of other lots in the subdivision, and likewise beneficial to the grantee of such lots because it insured the maintenance of the residential character of the subdivision. The restrictions were for the benefit of all of the owners of lots in Chestnut Hills, which include the appellees singularly and collectively.

On appeal a decree in an equity case based upon evidence heard in open court is presumed, as to a question of fact, to be correct and will not be set aside unless palpably erroneous. Coleman v. Estes, 281 Ala. 234, 201 So.2d 391.

Even without resort to this presumption of correctness, we can find no basis for concluding that the Chancellor was not correct in decreeing that the restrictive covenant in the Birmingham Realty Company's deed to Mary A. T. McGeever to Lot 1 was a covenant running with the land which had not lost its viability because of any change in the character of Chestnut Hills, and was enforcible in equity by any of the owners of lots in the Chestnut Hills subdivision.

The decree below is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.

On Rehearing

HARWOOD, Justice.

On application for rehearing counsel for appellants assert we erred in pretermitting consideration of appellants' argument under Subdivision A, which related to several assignments of error. The entire thrust of the argument under Subdivision A questioned the sufficiency of the evidence to support the court's decree as a whole, or some aspect of it. We held that the appellants had waived these assignments by failing to comply with Supreme Court Rule 9, in that the appellants' statement of the facts contained no recitation of the testimony of each witness in narrative form bearing on the points in issue so as to fully present the testimony of each witness clearly and concisely. In fact appellants' recital of the facts was a bobtailed version seeking in two and a quarter pages to reflect the facts to be gathered from a record of some 900 pages as described in our original opinion.

The basis of counsel's assertion of error on our part in pretermitting consideration of the insufficiency of the evidence to support the decree, is that this cause was submitted under Supreme Court Rule 40,

and they were relieved from making the recitals of the testimony of each witness in narrative form as contemplated by Rule 9.

Supreme Court Rule 40 is as follows:

"Whenever counsel for either side, or jointly, shall, upon the submission of any cause to this court, furnish three or more copies of the record, which must be printed or on legible carbon, the justices who are to decide the case will each read the record independently or in consultation, and will discuss, consider, and when practical, decide the case before the preparation of an opinion. This rule will not, however, prevent a reconsideration or discussion of the cause in consultation after the preparation or decision upon the last consideration. This rule is not intended as making any change as to the record proper, to be certified to this court by the clerk or register, but is intended as a change in the method of deciding the case, whenever counsel shall supply copies of the record, which must be printed or in plain carbon, and may be on paper corresponding in size with ordinary brief. Whenever the copies are supplied as contemplated by this rule, it will operate to relieve counsel from making such statement of the fact as is contemplated by the present rule."

The history of the proceedings on this appeal, we think, should remove the appellants from claiming the benefits they now seek under Rule 40.

The record in this case was filed on 11 July 1968, and on 9 August 1968, the appellants filed their briefs. Oral argument was requested in appellants' briefs.

On 12 September 1968, and within the extended time granted, the appellees filed their briefs. In their briefs the appellees argued strenuously the insufficiency of appellants' brief to present the question of the insufficiency of the evidence to support the decree because of a violation of the requirements of Supreme Court Rule 9, as to setting out the testimony of each witness in narrative form, etc.

The parties were notified that this case was set for oral argument on 25 November 1968, and on that day three additional copies of the record were filed in the clerk's office by the appellants, and argument was heard. The original record was then endorsed "Argued and Submitted."

When the appellees filed their briefs the posture of this appeal was set and fixed. Their briefs were in reply to the points and arguments raised by the appellants in their briefs.

As succinctly stated by the late and able Pelham, P. J., in Western Union Tel. Co. v. Emerson et al., 14 Ala.App. 247, 69 So. 335:

"It is the appellee's right to confine the errors to be reviewed to those properly urged in the brief filed on the original submission; and as appellee stands upon her rights in this particular and insists upon the waiver of other errors assigned, we will consider and discuss as grounds of reversal only those errors not waived or abandoned." (Citations omitted.)

On 25 November 1968, this cause was submitted on the briefs of the appellants as filed, on appellees' briefs as filed, and on arguments of respective counsel. There was of course no indication in the briefs of appellants filed on 11 July 1968, that this cause was to be submitted under Rule 40, thus relieving the appellants from setting out the testimony of each witness in narrative form as a prerequisite to arguing the insufficiency of the evidence. Indeed, there could not have been such an indication since the additional copies of the record were not filed until 25 November 1968, which was some time after the appellees had filed their briefs in reply to appellants' briefs.

The progenitor of Rule 40 was adopted as Rule 46 on 14 June 1914 (see 64 So. vii),

and has been in effect without substantial change since that time.

However, in 1955, the Rules of this court were revised upon recommendations of a committee of the Alabama Bar Association working in conjunction with representatives from this court and the Court of Appeals. After consideration of the recommendations as above submitted, the Revised Rules were promulgated by this court effective 1 June 1955.

Prior to that time the Rules provided that in civil cases the appellant's brief and argument would be filed upon submission of the cause, the appellee being given ten days after service of appellant's brief upon appellee's counsel in which to file a reply brief. 1923 Code of Alabama, Vol. 4, p. 882, Rule 13. This Rule 13 was carried forward in the Rules promulgated in 1955 as Rule 12, but in a greatly revised and altered form. These revised Rules, for the convenience of the profession, were published in 279 Ala. pps. XXI through XLIV.

Rule 12 provides that counsel for appellant shall file appellant's brief within thirty days after the transcript of the record has been filed in this court, counsel for appellee being given twenty days after service of appellant's brief upon him in which to file a brief for the appellee. Thereafter counsel for appellant may within ten days after service of appellee's brief upon him, file a reply brief to appellee's brief, limited to answering matters set up in appellee's brief. Counsel for appellee may then, within ten days of service of appellant's answering brief, file a reply brief, limited to matters set up in the answering brief of appellant. Thereafter no additional briefs may be filed except with consent of this court or a justice thereof.

 Rule 4 of the Revised Rules of 1955, provides that either party may request oral argument by endorsing such request on the last page of the brief. It must be

assumed that this means that such endorsement shall appear in the original brief of each party. If no such request is made by either party, the clerk of this court when briefs from all parties have been filed, will immediately submit the case in term time upon the transcript and such briefs.

 Rule 4 was devised to make for a more expeditious submission of cases where no oral argument is requested, and to permit a submission of the case immediately upon the filing of the briefs rather than have the submission delayed until the call of the appropriate division. Of course, if argument is demanded by either party, the cause is submitted on argument and briefs already filed at the next call of the division from which the case originates. The request for oral argument merely delays the date of the submission of the case, it cannot be deemed to operate so as to destroy the posture of the case as fixed by the briefs already filed.

It is true that Rule 40 provides that:

"Whenever counsel for either side, or jointly, shall, upon the submission of any cause to this court, furnish three or more copies of the record, * * * it will operate to relieve counsel from making such statement of the fact as is contemplated by the present rule."

At the time Rule 40 was promulgated in 1914, and until 1 June 1955, the appellant filed his brief upon submission of the cause. The appellee would not therefore be prejudiced by filing additional copies of the record under Rule 40 at the time of submission since presumably appellee's counsel would not be served with a copy of appellant's brief until the submission of the case and would not have filed his brief.

Rule 12 of the Rules as revised in 1955, changes this picture completely. The briefs are all filed well in advance of submission. The counsel for appellee have spent their time and labor in answering appellant's

brief as framed by the points and arguments presented in appellant's brief.

The changes wrought by Rule 12 are also most beneficial to the members of this court in that by reading the briefs they can determine in advance of argument the points to be presented.

There is a palpable conflict between Rule 40 and Rule 12, and to some extent between Rule 40 and Rule 2, if Rule 40 be interpreted today as permitting the filing of additional copies of the record on the day of submission of the cause and thereby relieve counsel for the appellant of the requirement that he set out in narrative form the testimony of each witness if he intends to question the sufficiency of the evidence to support the judgment or decree.

Counsel for the appellee has performed his full duty when he files his brief replying to the points raised in appellant's brief. If appellant's brief is deficient in form, counsel for appellee is justified in relying on this deficiency in answering the contentions of the appellant.

To accord to appellant's contentions in the present case that by filing additional copies of the record at the time of the submission of this cause, he can thereby cure a defect in his brief which had been filed well in advance of submission, as was appellee's answering brief, would in effect abrogate Rule 12.

Such result would be highly undesirable. While Rule 40 and Rule 12 both appear in the Revised Rules promulgated in 1955, it is apparent that Rule 40 should have been modified so as to make its operation compatible with Rule 12, and to some extent with Rule 2. However, such indicated revision of Rule 40 was apparently overlooked.

We see no reason why Rule 40 can not yet have some field of operation, but conclude, and so hold, that if counsel desire to file additional copies of a record in order to come within the influence of Rule 40, then such additional copies should be filed preferably at the time the main record is filed, and certainly not later than at the time in which the respective original briefs must be filed. Any attempt to file additional copies of a record after this time could entirely alter the schedule of processing a case in this court, cause unnecessary delay, and work undue hardship on opposing counsel.

In the present case counsel for appellant must be considered as estopped from deriving any benefit from their tardy attempt to change the posture of the proceedings on this appeal.

Counsel in brief on rehearing further contends that we erred "in holding that Ordinance No. 398–G is invalid as being unconstitutional in that the Ordinance impairs the obligation of a written contract creating a covenant running with the land." From this premise, counsel expresses the view, if we interpret the argument correctly, that an intolerable burden would be placed upon a zoning authority in researching the title to every lot in a tract covered by a zoning ordinance if the ordinance could be declared void in toto as unconstitutional because of a covenant restricting the use of one or more of the lots in the zoned tract. We agree that to place such a burden on the zoning authority would be unwise because it is impractical and unnecessary.

In his decree the Chancellor decreed, (1) that Ordinance 398–G was invalid on his finding that the ordinance was arbitrary and unreasonable in view of all the facts, and (2) that the restrictive covenant in the McGeever deed was a covenant running with Lot 1.

We declined to review the conclusions of the Chancellor that the ordinance was invalid because arbitrary since such conclusions were based on the sufficiency of the facts presented to the Chancellor to support his decree and the facts were not set forth in appellants' brief in adequate or proper form as required by Rule 9.

**264**

As to the Chancellor's conclusions that Lot 1 was yet within the protective coverage of the restriction in the McGeever deed, and that such restriction was a covenant running with Lot 1, and our approval of and affirmance of the Chancellor's views in this aspect of the decree, counsel for appellants seem now to be in accord with such views and conclusions.

 We have re-read our opinion and find nothing therein substantiating counsel's perturbation that it might be construed as holding that a zoning ordinance is unconstitutional if included in the zoned tract are lots containing restrictive covenants as to the use of such lots which are more limited than that permitted by the zoning ordinance. We expressed the view that a zoning ordinance could not constitutionally invalidate a covenant running with the land, since such covenant constitutes a contract between the parties which could not be impaired by an ordinance or a statute. We did not intend that, nor should, it be concluded from this observation that a zoning ordinance is unconstitutional because some lot in the zoned tract might be under a covenant running with such lot restricting its use. Such a situation might well affect the enforcibility of the ordinance as to the lot or lots so restricted in an action between the parties concerned, but would not go to the constitutionality of the ordinance as a whole.

We think that counsel for appellants in construing our opinion have conjured up spooks where no such spooks really exist.

However, we have extended our original opinion out of deference to earnest counsel for appellants and hope that such extension will serve as a tranquilizer to allay the nervousness exhibited by counsel as to the proper interpretations to be accorded such views and conclusions.

Opinion extended; application overruled.

LIVINGSTON, C. J., and LAWSON, MERRILL, and MADDOX, JJ., concur.