This is a zoning case. Plaintiffs, Leslie R. Longshore and HBC Investments, filed a complaint in circuit court seeking a judgment holding that the actions of the City of Hoover and its city council, in denying a petition to rezone Longshore's property, were unconstitutional and invalid. After various proceedings, including a remand to the city council, the trial court denied relief.
Longshore owns, and HBC Investments has an option to purchase, a 1.3 acre parcel of real property located at the southwest corner of the intersection of Lorna Road and Woodmeadow Drive in the City of Hoover. Longshore and HBC (hereinafter Longshore)[1] applied to the Hoover Planning and Zoning Commission for a change in the zoning classification of the property from R-1 (single family residential) to C-P (preferred commercial). Longshore had plans to build an office building on the property.
The Commission denied the request on November 12, 1979. Longshore took his request to the city council, which held a public meeting on the question on February 4, 1980. A number of area residents were present and objected to the change. The request was tabled until March 17, when at another meeting of the city council there was more discussion and the council voted unanimously to deny the request. Longshore filed his complaint in circuit court on May 8, 1980.
The complaint alleged, inter alia, that the city council's refusal to rezone the property was arbitrary, capricious, and unlawful, had "no conceivable relationship to the health, safety, morals or general welfare of the City of Hoover, Alabama, or its inhabitants," constituted "a taking of the plaintiffs' property without due process of law," and that the zoning ordinance "in its application to plaintiff's [sic] property is, therefore, unconstitutional and confiscatory." It also alleged that the proposed use of the property as an office building "will not unduly and unreasonably change the present pattern of the surrounding neighborhood, nor create undue traffic burden or hazard."
Defendants, the City of Hoover and its mayor and council members, filed an answer denying the averments of the complaint and averring that the question of whether the property should be rezoned
 "was one that was fairly debatable, consumed extensive hearings before the City of Hoover with numerous witnesses who testified in opposition [to] the said request, and [defendants] would show unto the Court that the City's actions in connection therewith are legal in every way."
The answer also stated that the testimony presented at the public hearings indicated that the rezoning "would, in fact, create a tremendous traffic burden and hazard."
The court held a trial without a jury, after which it entered an interim decree on August 17, 1981. That decree noted that evidence was presented to the court which was not before the city council. The decree continued,
 "The Court is of the opinion that, had this evidence been presented to the Defendant City, a different result might have obtained. For example, one of the Plaintiff's expert witnesses testified that an authorization for access to Lorna Road to and from the subject property had been granted just a few days before the trial of this matter commenced. The *Page 956 
traffic condition around the subject property was one of the significant issues before the City and before the Court. Because of these factors, the Court is of the opinion that the Defendant City should have an opportunity to reconsider the Plaintiff's application in light of the evidence presented at the trial of this cause which was not available to the Defendant City at the time it heard the Plaintiff's request."
The decree instructed the city council to elect whether to re-hear Longshore's petition and stated that if the council did so elect, notice should go out to adjoining property owners and Longshore should present substantially the same evidence as he did at trial. The city council elected to re-hear the petition and did so at its meeting on November 3, 1981. At that meeting there was substantial testimony for and against the proposed rezoning. The council adopted an ordinance rezoning the property to R-4 (multi-family use).
Longshore filed an amended complaint on October 8, 1982, challenging the council's decision to rezone the property to R-4. The city filed an answer to the amended complaint. Longshore then filed a second amended complaint, alleging that one of the council members who participated in the public hearing, Hank Blackmon, owned property near the subject property and was a leader of the opposition to the proposed rezoning. The city answered that Longshore had made no objection to Blackmon's participation.
The court entered a thorough and well-reasoned opinion, from which we quote at length:
 "Lorna Road is a heavily traveled, high density city street running north and south through the City. In past years, it was U.S. Highway 31 prior to the highway being relocated to the west. Woodmeadow Drive is a neighborhood street that runs in a westerly direction from Lorna Road which then changes to Arnold Road and then continues westerly to U.S. Highway 31. Woodmeadow Drive, along the north side of the subject property, separates the subject property from the right-of-way of Interstate Highway I-459 to the north. The paved portion of I-459 is approximately 75 feet north of the subject property and is substantially lower in grade than the grade of Lorna Road and Woodmeadow Drive.
". . . .
 "I-459 appears to have been used by the City of Hoover as the boundary or buffer line between properties zoned commercial and Multi-Family to the north along Lorna Road and properties zoned Single Family and Multi-Family to the south along Lorna Road. The latter residential uses continue approximately one-half mile south of the subject property. At such point, commercial zoning begins and a little further to the south is a heavily developed regional mall.
 "The property to the immediate west, south and east of the subject property, is zoned R-1 Single Family District and R-4 Multi-Family District. . . . The dominant use of the properties south of the subject property to Highway 31 is Multi-Family.
 "It is clear from the evidence presented at the first court hearing and from this hearing, the subject property had no reasonable, suitable or practical use for single family residence purposes. The property could only accommodate two or three residential lots and the property's physical characteristic of being substantially lower than the adjoining roads reduced its economical usage for such purpose. Moreover, the disturbing and distracting effects of the interstate highway and Lorna Road would have made single family usage extremely undesirable to a prospective owner or purchaser.
 "The same cannot be said or found in respect to a Multi-Family use for the property. Though the evidence shows that the adverse impact and effects of the adjoining road and highway continue to exist, this impact and effects can be lessened or reduced by knowledgeable location and alignment of a multi-family structure or structures. The higher *Page 957 
density use would also make economically feasible topographical work to be done on the property to make it more desirable from a construction standpoint. It further should be noted that the evidence shows that a multi-family use of the property would not have as much of an adverse impact and effect on the surrounding residential properties in the Woodmeadow Subdivision as would a commercial use of the property for an office building.
 "The Court further notes that the Plaintiffs' expert witness, shown to be qualified as a professional land use planner, opined in his testimony at the first hearing that the most suitable use for the subject property was offices, commercial or multi-family. The witness' testimony in the second hearing differed in the respect that it was then his opinion that the property had no practical or reasonable use for any kind of residential usage.
"[Discussing case authorities.]
 "In addition to and also as a part of the Plaintiffs' contentions that the action of the Hoover Council was arbitrary and capricious, the Plaintiffs contend that Hoover City Councilman Hank Blackmon was the owner of nearby property and headed the opposition at the first rezoning hearing in respect to the Plaintiffs' application. Councilman Blackmon was thereafter elected to the Council of the City of Hoover, participated in the public hearing held at the time of the second rezoning hearing and then voted with the other Council members to rezone the Plaintiffs' property to R-4 Multi-Family District. The Plaintiffs contend that Councilman Blackmon had such a conflict of interests that his participation infected the entire procedure and invalidated the Council action.
 "The Court notes that there was no request by the Plaintiffs or any other person that Councilman Blackmon recuse himself from participating in the second rezoning hearing and subsequent vote though it appears his position on the Plaintiffs' application was well known. It further appears that, though councilman Blackmon characterizes himself as living in the neighborhood of the subject property, presumably in the Woodmeadow Estates Subdivision, the evidence does not show that he has any pecuniary interest in the outcome of the proposed change of zoning or that he would be financially affected in any manner by the final result. Blackmon's special interest has been shown only to be that of a neighboring property owner who is opposed to the proposed change of zoning and was thereafter elected to the City Council.
 "[Quoting and discussing 62 C.J.S., Municipal Corporations, § 402 (1949), and 101A C.J.S., Zoning Land Planning, § 91a (1979).]
 "In the circumstances here, Blackmon has not been shown to have a pecuniary or direct interest in the zoning question and his interest [has] been shown only to be that of one of the group or class of persons opposing the zoning change. It further appears that Blackmon's vote was not decisive on the question but that he voted for the R-4 Multi-Family Zoning along with all other members of the Council voting."
The court found that the decision of the city council to rezone to R-4 instead of to C-P involved "a fairly debatable question and was, therefore, not arbitrary and capricious," and that Blackmon's participation was not grounds to invalidate the zoning change. The court adjudged that the rezoning to R-4 "was a lawful and valid exercise of the authority of the said City Council," and denied Longshore's claims for relief. The court denied Longshore's post-trial motion, and he appealed.
Zoning decisions are legislative in nature, and a court will not overturn a zoning ordinance unless it finds that the zoning authority has acted in an arbitrary and capricious manner. If a zoning question is fairly debatable, the decision of the zoning authority will not be disturbed. Woodard v. City of Decatur, *Page 958 
431 So.2d 1173 (Ala. 1983); City of Gadsden v. Downs, 412 So.2d 267 (Ala. 1982); Jefferson County v. O'Rorke, 394 So.2d 937 (Ala. 1981);Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1970).
Longshore argues that Jefferson County v. O'Rorke, supra, presents a strikingly similar factual situation in which this Court affirmed a finding by the trial court that the county commission's refusal to rezone O'Rorke's property was arbitrary and capricious. In that case, however, the trial court found from the evidence that the county commission's refusal to rezone had the effect of "relegating the use of Appellees' land . . . to nothing more than a `buffer zone,' in view of its surroundings." Id., 394 So.2d at 940. The property was located at the intersection of Interstate Highway I-459 and U.S. Highway 280, a principal north-south route; on the other side of each highway, major commercial development was either scheduled or in progress; and the only issue put forth as making the question fairly debatable was the uncertainty as to the details of the proposed onsite sewage disposal system.
In this case, the evidence supports the trial court's finding that Longshore's property has a reasonable, suitable or practical use under a multi-family classification. The neighboring lots on both Lorna Road and Woodmeadow Drive are in use as single-family residences. Across Lorna Road is a church, and the commercial uses on the other side of I-459 are much less intensive than the commercial uses involved in O'Rorke —
Lorna Road just north of I-459 has a skating rink, a post office, and a convenience store. I-459 is 20 or 30 feet lower than Woodmeadow Drive, so the interference from it would be less than if it were at the same or a higher grade. Furthermore, a multi-family use is in accordance with existing development on Lorna Road south of I-459; for example, there is an apartment complex a short distance to the south of the subject property.
Under the facts of record, we cannot say that the Hoover City Council acted arbitrarily and capriciously in changing the zoning classification of the subject property from R-1 (single family) to R-4 (multi-family). The trial court did not err in upholding the council's decision.
The quoted portions of the trial court's opinion disposing of the allegations of conflict of interest on the part of Councilman Blackmon adequately answer Longshore's contentions. The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] We omit reference to HBC Investments as a plaintiff and appellant for convenience. The proceedings below often refer solely to Longshore.