202 So.2d 726

### EPISCOPAL FOUNDATION OF JEFFERSON COUNTY et al.

v.

### George B. WILLIAMS et al.

6 Div. 321.

Supreme Court of Alabama.

Sept. 14, 1967.

Wm. A. Thompson (Asst. City Atty.), and A. Key Foster, Jr., of Martin, Balch, Bingham, Hawthorne & Williams, Birmingham, for appellants.

John W. Williams, Jr., and Carlos E. Heaps, Birmingham, for appellees.

LIVINGSTON, Chief Justice.

Appellees filed their complaint in the Circuit Court of Jefferson County, in Equity, seeking, inter alia, a declaratory decree that a certain ordinance of the City of Birmingham constitutes spot zoning, and in effect condemns and confiscates the property of complainants without due process of law and without just compensation.

The trial court, after hearing the evidence ore tenus, subject to Act No. 101, Acts of Alabama 1943, p. 105, Title 7, Section 372(1), 1958 Recompiled Code of Alabama, entered a final decree declaring that the Zoning Ordinance of the City of Birmingham, 251–G, as it applies to Lot 1, according to the survey of Montclair Road Development as recorded in Map Book 72, page 57, in the Office of the Judge of Probate of Jefferson County, constitutes "spot zoning, or zoning that is arbitrary, capricious, inequitable and discriminatory," and is void.

Argued assignments of error challenge the trial court's decree in declaring that said ordinance constitutes "spot zoning," or zoning that is arbitrary, capricious, inequitable and discriminatory.

We here set out some of the essential and pertinent facts and contentions as shown by the pleading and evidence. Ordinance 251–G, passed by the City Council of the City of Birmingham on January 5, 1965, amended Zoning District Map of the City of Birmingham, as described in Section 2, Article III of Chapter 57, General Code of the City of Birmingham of 1944, as amended. There is no question raised that the procedure in passage was faulty.

This Ordinance, 251–G, rezones or redistricts Lot 1, Montclair Road Development Survey, from R–3, Single Family District, to B–2, General Business District; also Lots 2 and 3 of the same Development Survey from R–3, Single Family District, to O–1, Office and Institutional District.

As we understand the record before us, the City Council in the adoption of said Ordinance 251–G amended the Comprehensive Zoning Map that was in effect.

The area described in Zoning Ordinance 251–G; namely, Lots 1, 2 and 3, Montclair Road Development, form an irregular triangle at the intersection of Montclair Road and Montevallo Road. Lot 1 of the development comprises the apex of this triangle and is the only lot involved in this litigation. The entire tract, Lots 1, 2 and 3, consists of 4.4 acres fronting mostly on Montclair Road. The other two lots, 2 and 3, lie adjacent to an extension of Elder Street that transgresses the area between Montclair Road and Montevallo Road; the extension connects these two roads. Lot 1 is contiguous to the east side of this connecting road, Elder Street, while the other two lots, 2 and 3, are on the west side. All of these lots, 1, 2 and 3, are owned by appellant, Episcopal Foundation of Jeffer-

son County, a Corporation, and were so owned when Ordinance 251–G was passed.

Appellees are the separate owners of Lots 1, 2 and 3, Block 2, according to the amended survey of Crestline Gardens, 3rd Addition, recorded in Map 44, page 15, in the Probate Office of Jefferson County. These lots, on and before Ordinance 251–G was passed on January 5, 1965, were zoned R–3, Single Family District, under the zoning laws of the City of Birmingham, as was the area embraced in Lots 1, 2 and 3 owned by the Episcopal Foundation. Appellees on or before January 5, 1965, when Ordinance 251–G was passed, occupied residences on their property. Appellees' lots are adjacent to the south side of Montevallo Road, which is on the south side of the triangle, whereas Lots 1, 2 and 3, belonging to appellant, Episcopal Foundation, are adjacent to the north side of said Montevallo Road and to the south side of Montclair Road. In other words, Montevallo Road (the south road) separates appellees' lots from Episcopal Foundation Lot 1, here involved on this appeal.

It further appears that a vast area of land lying to the north of Montclair Road (the north road of the triangle) has been zoned and developed as a business area, the Eastwood Mall Shopping Center, to serve the inhabitants in that section of the city. This business area, under expansion, has a buffer zone of 100 feet in width between it and Montclair Road. There are also some service stations in the area that serve the public. The area of land lying south of Montevallo Road (of which appellees' lots are a part) is zoned and used exclusively for residential purposes.

We wish to note here that this appeal is not concerned with the fact, as the evidence shows, that appellant Foundation has bargained to sell Lots 1, 2 and 3 of the Development to a major oil company for erection of a service station; and that said oil company has released Lots 2 and 3 from its contract of purchase, so that it can be sold for the erection of an office building and a church thereon. Considerable evidence was adduced as to the effect a service station on Lot 1 would have upon appellees' property and comfort.

Our observation in Shell Oil Company v. Edwards, 263 Ala. 4, 81 So.2d 535, "The effect of the city ordinance is not to permit a service station to be operated on a lot in Block 5 as indicated, but to enact that the city zoning system will not prohibit that to be done on the proposed lot" has application here. The effect of Ordinance 251–G is not to permit a service station to be erected on Lot 1 of appellant Foundation, but to enact that the city zoning system will not prohibit that to be done on said lot. The oil company will have to process its own application for permission to build the service station, independent of its purchase, but such processing is not inhibited by the zoning character of the lot upon which it proposes to build a service station. The oil company is not a party to this suit and it would be premature to here determine if the operation of the service station would constitute a nuisance and thus be subject to restraint of law. The decree here under attack rightly makes no adjudication of that issue.

The contention of appellees that Ordinance 251–G constitutes "spot" zoning is without merit. In Shell Oil Company v. Edwards, 263 Ala. 4, 81 So.2d 535, this Court stated:

"We take judicial notice that it is comprehensive as required by section 777, Title 37, Code, and Title 62, section 710, and recognize that the zoning of a 'spot', not a part of a comprehensive plan, is not authorized by law. Chapman v. City of Troy, 241 Ala. 637, 4 So.2d 1; Davis v. City of Mobile, 245 Ala. 80, 16 So.2d 1; Johnson v. City of Huntsville, 249 Ala. 36, 29 So.2d 342; Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402, 44 So.2d 593; Phillips v. City of Homewood, 255 Ala. 180, 50 So.2d 267: but that is not here undertaken. This ordinance as amended

being a part of a comprehensive plan is not 'spot' zoning."

■ Ordinance 251–G, being an amendment to the comprehensive zoning ordinance of the City of Birmingham, became a part of the existing comprehensive ordinance and, a fortiori, is a legislative act. Ball v. Jones, 272 Ala. 305, 132 So.2d 120. It is not necessary that the amendment itself be comprehensive in its nature. Phillips v. City of Homewood, supra.

■ While the court is given the power to review the validity vel non of an ordinance or other legislative act, it is not given the power to review the wisdom or unwisdom, or the rightness or wrongness of laws passed by the legislative power delegated to the City Council of the City of Birmingham, or like bodies. Ball v. Jones, supra.

■■ "Every intendment is to be made in favor of the zoning ordinance and the matter was largely in the legislative discretion of the municipal authorities. * * * Here the city Commission is acting in the exercise of a legislative function and with a wide degree of discretion." Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553.

■ In the instant case, the City Council of the City of Birmingham, although without recommendation of the Zoning Advisory Committee, in our judgment, acted within constitutional bounds and did not take arbitrary, unreasonable or unlawful action. The Council had a superior opportunity to know and consider varied conflicting interests involved, to balance the burdens and the benefits, and to consider the general welfare of the area involved. There was procedural compliance with the requirement for a public hearing.

■■ The courts should be slow to set up their own opinions as against those charged with and in position rightfully to perform such duty. The fact that the complainants (appellees) may suffer some financial loss and depreciation in the value of their property is not a test of the constitutionality of the zoning ordinance; nor is it a test to determine if the zoning ordinance is arbitrary, capricious, inequitable and discriminatory. Leary v. Adams, 226 Ala. 472, 147 So. 391.

■ The question is whether the reclassification of Lot 1 of the Episcopal Foundation is sound and fair. If the question is fairly debatable, the court will not substitute its judgment for that of the City Council of Birmingham in the exercise of its legislative power. Leary v. Adams, supra.

■ The duties of the local authorities in Birmingham, charged with zoning property, are evidently arduous and of a delicate character, requiring sensitive insight and perspicuity as to the public health, safety, morals and general welfare incident to zoning. We cannot say that their judgment is always free from error, but before the courts will interfere, it must be made to appear that such an ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat.

■ We think that men may reasonably differ as to the advisability of a zoning change or in a change affecting zoning districts. We are unwilling in the instant case to substitute our opinion for that of the City Council upon whom the responsibility of weighing all factors devolved, and who had access to full information and acted accordingly. We have no reason to say that the City Counsel did not act with enlightened judgment in consideration of the ordinance here under attack.

On remand of this cause, the trial court will vacate its final decree and the amendment thereto and enter one sustaining the validity of Ordinance 251–G as it applies to Lot 1, according to the survey of Montclair Road Development as recorded in Map Book 72, page 57, in the office of the Judge of Probate of Jefferson County.

The decree of the trial court is reversed and the cause remanded with directions.

GOODWYN, COLEMAN and HARWOOD, JJ., concur.