302 So.2d 847

**G. B. ALDRIDGE et al.**

v.

**Clarence B. GRUND et al.**

**SC 505.**

Supreme Court of Alabama.

Sept. 26, 1974.

Rehearing Denied Nov. 21, 1974.

William K. Murray, Birmingham, for appellants.

John Martin Galese, Birmingham, for appellees.

McCALL, Justice.

The appellants, who were respondents in the trial court, appeal from an adverse decree which held that the rezoning of certain real property by the zoning authorities

of Jefferson County, Alabama, was arbitrary and capricious. The trial court set aside and declared the action of the zoning authority in rezoning the property void and of no effect. The case was submitted here after oral argument (a) on a motion to dismiss the appeal and (b) on the merits of the appeal.

The motion to dismiss the appeal was grounded on the appellants' failure to file the transcript timely. The transcript of record was filed with the clerk of the Supreme Court on January 18, 1974. Prior to filing the record and on December 28, 1973, Clarence B. Grund, one of the appellees, filed his motion to dismiss the appeal and affirm the judgment of the trial court.

On July 10, 1973, the trial judge entered a final decree in favor of the appellees. On August 8, 1973, the appellants perfected the appeal by filing with the register good and sufficient surety for costs of appeal which was approved on the day it was filed. Federal Deposit Insurance Corp. v. Equitable Life Assurance Society of United States, 289 Ala. 192, 266 So.2d 752; Jones v. Kendrick Realty Co., 286 Ala. 435, 241 So.2d 107.

■ The court reporter did not file the transcript of evidence with the Register in Chancery until November 21, 1973, and on that date the transcript of the evidence is deemed to have been established. Stevens v. Thompson, 279 Ala. 232, 184 So.2d 140. No extension of time was granted by the trial court within which to file the transcript of evidence with the register. The appellee's motion to dismiss the appeal was not filed until December 28, 1973. This was after the transcript of evidence was filed with the register, but before the record was filed with the clerk of the Supreme Court.

As stated above, the record was filed with the clerk of this court on January 18, 1974, which was on the fifty-eighth (58th)

day after the court reporter filed the transcript of evidence with the register. The record was filed here within the sixty days after the transcript of evidence had been established below. Rule 37, Revised Rules of the Supreme Court of Alabama, as amended on July 2, 1973, became effective on July 3, 1973, 291 Ala. XXI. It reads as follows:

"In all cases, either civil or criminal, the transcript of the record shall be filed with the clerk of this court within sixty days after the signing or establishing of the bill of exceptions or the expiration of the time for establishing the same, except: (a) In cases where bills of exceptions have been abolished, the transcript of the record shall be filed in this court within sixty days after the transcript of the evidence has been established in the court below, and (b) in cases where there has been no attempt either to establish a bill of exceptions or to procure a transcript of the evidence in the court below, the transcript of the record shall be filed in this court within sixty days after the taking of the appeal. The trial judge may extend the time for filing the transcript of the record in this court for good cause shown for not to exceed thirty days, and this extension may be made within the thirty additional days, provided that in no event shall such extension project the time for filing the transcript of the record beyond ninety days. Thereafter the time for filing in this court may be extended only by this court for good cause shown upon petition in writing of which adversary counsel must have ten days' notice. The application to the trial judge and a ruling thereon is a prerequisite to making the application to this court, unless it be shown that the trial judge was unavailable or that the application to him for an extension was not made for a good and sufficient reason. A copy of any order of the trial judge extending the time for filing the transcript of the record shall be filed by

the appellant in this court within five days after the date of such order."

Rule 37, as amended, supra, which applies in all cases, either civil or criminal, prescribes no fixed time limit within which the court reporter must file the transcript of evidence with the register. The rule simply provides "* * * the transcript of the record shall be filed in this court within sixty days after the transcript of the evidence has been established ·in the court below * * *." The record was filed here on the fifty-eighth day, which was within the sixty day limit after November 21, 1973, when the transcript of evidence was filed.

■ While the appellee, upon submission of the cause on appeal, presented, in his motion to dismiss, his objection, and the point as to the delay, he did not point out, with supporting affidavit, material omissions or defects in the transcript of evidence which should or would have been the subject of contest before the trial judge, had the transcript of evidence been timely filed. Under the circumstances, it is within the discretion of this court to consider the transcript of evidence, which we are agreeable to. See Rule 48, Revised Rules of Practice in the Supreme Court, 279 Ala. XXI. This rule reads as follows:

"In cases at law where the court reporter's transcript of the evidence is not filed with the clerk of the circuit court within the time prescribed by law, but is filed within the time for taking an appeal, it will be considered ·by this court if no objection thereto is presented upon the submission of the cause; and it may be so considered in the discretion of the court, even though the point as to the delay be presented on appeal, unless counsel objecting thereto shall point out, with supporting affidavit, material omissions or defects in such certified transcript which should or would have been the subject of contest before the trial

judge; in which latter event the certified transcript is not to be considered."

We think the above rule has application even though it utilizes the language, "In cases at law," because Alabama Rules of Civil Procedure (ARCP), 290 Ala. 373, provide for only one form of action to be known as "civil action." The distinction between law and equity has been abolished. Rule 2 ARCP. In applying Supreme Court Rule 48, supra, it will be recalled that the court reporter's transcript of evidence was filed within the time for taking an appeal, which is six months from the rendition of the final judgment or decree. Code of Ala., Tit. 7, § 788.

The motion to dismiss the appeal on account of late filing is overruled and denied.

■ The appellees contend that assignment of error No. 6 complains of matter entirely unrelated to the appellants' other seven assignments of error, and that the appellants have elected to argue all eight assignments of error in bulk. The appellees cite Quarles v. State, 288 Ala. 275, 259 So.2d 823, Union Central Life Insurance Co. v. Scott, 286 Ala. 10, 236 So.2d 328, and State v. Barnhill, 280 Ala. 574, 196 So.2d 691, for the proposition that where several unrelated assignments of error are grouped and argued together, if any one is found to be without merit, the other assignments will not be considered.

Thus the appellees raise an alleged defect or insufficiency in the appellants' brief, that is, they argue unrelated assignments of error in bulk. Rule 52, Revised Rules of the Supreme Court of Alabama, 290 Ala. XVII, in its pertinent part, reads as follows:

"Any defect or insufficiency in a brief shall be deemed waived by the opposing party or parties unless such opposing party or parties, prior to submission, files a motion with this court, a copy of which shall be served on counsel for the adverse party or parties, calling such de-

fect or insufficiency to the attention of this court and such adverse party or parties or the court calls it to the attention of the party or parties; and no appeal will be affirmed on account of such defect or insufficiency nor such defect or insufficiency noted, unless such defect remains uncorrected at the time of submission or within such reasonable additional time as may be granted by this court to correct such defect or insufficiency."

It is not necessary to decide whether or not such defect or insufficiency existed in the appellants' brief, because after the appellees, in their brief, called this matter to the attention of the appellants, the appellants corrected the defect or insufficiency in their correction brief, filed prior to the time of submission of the case, by separately arguing each of the eight assignments relied upon for reversal.

■ Appellants' assignment No. 1 is that the trial court erred in that the decree of the court is contrary to law; No. 2 is that the decree of the court is contrary to the evidence; and No. 8 is that the trial court's decision was arbitrary and capricious. The appellees contend that these assignments are insufficient, because they are too general to invite the attention of the court. While the three assignments may be general in their expression, nevertheless, being addressed to a so-called unit decree, they fall within the following rule:

"Where a decree is a single unit and is erroneous in any respect, the error infects the entire decree and an assignment of error in general terms is sufficient to invite review. * * *" Powell v. Powell, 285 Ala. 230, 233, 231 So.2d 103, 105. See also Auto-Owners Insurance Co. v. Stokes, 284 Ala. 537, 545, 226 So.2d 320; Wiggins v. Stapleton Baptist Church, 282 Ala. 255, 210 So.2d 814; Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 179 So.2d 287; Matthews v. Matthews, 292 Ala. 1, 288 So.2d 110, 115; Robinson v. Murphy, 69 Ala. 543, 545.

The decree here is a unit decree because it contains a single ruling by the court, namely, that the rezoning of the subject real property from E–2 Estates) to R–4 (Multiple Dwellings) by the zoning authorities of Jefferson County, Alabama, was arbitrary and capricious within the meaning of the decisions of our Supreme Court. Error addressed to this decree in general terms is sufficient to invite our consideration.

■ The appellees have further moved the court to strike the brief of Dr. and Mrs. Lewis S. Chase, respondents in the court below, on the grounds that they did not join in the appeal and failed to assign error on the record. When the appeal was taken, the register issued a summons to each of them to unite in said appeal, if they saw proper. This notice by summons was served on each of these respondents pursuant to Code of Ala., Tit. 7, § 804. Their interests in the subject matter of this appeal are therefore properly before the court, although neither of them joined in the appeal by giving security for costs as required by Code of Ala., Tit. 7, § 766.

The Chases filed no separate brief, but undertook by endorsement thereon to join and adopt as their joint brief, the one which was filed by the appellants Aldridge, Myca, Inc., a corporation, and Raiford Ellis. Since that brief is properly before us as the appellants' brief and will be considered by us, it would serve no useful purpose to strike it as to the Chases. The motion is denied.

The real property sought to be rezoned by the appellants from E–2 (Estates) to R–4 (Multiple Dwellings) is approximately thirty acres in extent and is located on the east side of Rocky Ridge Road, which runs in a north by northeast direction from its southerly intersection with U. S. Highway 31, a divided highway, south of Birmingham, to U. S. Highway 280, another divid-

ed highway, with which Rocky Ridge Road intersects at its north terminous, a short distance south of the municipal water filtration plant.

The purpose for the change in the zoning to R–4 (Multiple Dwellings) is to allow the construction on the property of apartment units in clusters which will be made available for public rental. After giving notice and holding a public hearing, the Planning and Zoning Commission of Jefferson County recommended to the County Commission that the rezoning be approved. Next, after advertising a meeting and notifying interested parties, a public hearing was held by the County Commission. The commissioners subsequently visited the area and the subject property. There were some individuals who favored the rezoning and there were some who opposed it, the conflicting views being made known to the Commission. In changing the zoning from E–2 (Estates) to R–4 (Multiple Dwellings) for an apartment complex, the Commission thereafter unanimously ordained as follows:

"WHEREAS, after due consideration of the recommendations and objections aforesaid, and as a means of further promoting the health, safety, morals and general welfare of this County, this Board of County Commissioners of Jefferson County, Alabama does hereby approve and adopt the herein contained amending provisions for the purpose, among other, of lessening congestion in roads and streets: encouraging such distribution of population and such classification of land uses as will tend to facilitate economical drainage, sanitation, education, recreation and/or other public requirements; conserving the property values, including the tax base; and encouraging the most appropriate use, condition of use and/or occupancy of the land in the County.

"NOW, THEREFORE, BE IT RESOLVED that this amendment be placed on the Minutes of this Board of County Commissioners of Jefferson County, Alabama, and the same be declared effective and in force this the 21st day of March, 1972."

The appellees, who were owners and occupants of single family dwellings on real property adjoining and adjacent to the rezoned property, then filed a bill in equity against the County Commission and those seeking the rezoning to enjoin the enforcement of the rezoning enactment and to have the action of the County Commission in bringing about the rezoning declared arbitrary, capricious, discriminating, not in conformity with comprehensive zoning plans, contrary to the public interest, unreasonable, oppressive, confiscatory and not reasonably related to the protection of public health, safety, morals and general welfare, and that such action amounted to the taking and confiscation of the appellees' property without due process or just compensation.

At the conclusion of the evidence and the testimony, which was heard ore tenus in open court, the chancellor first entered an "Interim Decree" wherein the court found that a full and proper appraisal of the effect of the rezoning had not been accomplished by the Commission in regard to (1) the possible flooding which might occur occasionally on account of the coursing of Little Shades Creek through the subject property, (2) the vehicular traffic situation, and (3) the fire and police protection features. This decree then gave the Commission an opportunity to make a further and more exhaustive survey of the property in order to consider all of the factors which the trial court said are necessary for the preservation of the public welfare and of the parties involved in the cause. The Commission undertook to comply with this decree by holding another public hearing after notice, and then it timely submitted to the court a further report of its findings which were again favorable to rezoning the property. Following receipt of the commissioners' report pursuant to the In-

terim Decree, the court entered an adverse decree to the rezoning, thus reversing the action of the Commission.

Among the matters found by the court in its final decree were that the rezoning "involves an extreme alteration of the character of the neighborhood" by the construction of a considerable number of multi-family units, wherein a large number of people will dwell, and that "the zoning authorities must in a full and proper exercise of the zoning function, consider every facet of the new and potential manner of use of the property so as to afford to the individual property owners and to the public generally every convenience and protection which the government should guarantee to its citizens." The court further found as set forth in the Interim Decree that "the zoning authorities had, up to that time, from the evidence presented at the oral hearing of this cause, fallen far short of making a survey of the subject property which is adequate for the purposes of this type of rezoning." The court further found that the commissioners' final report afforded "no evidence of any new or extensive or comprehensive study of the total and potential effect of the subject rezoning." The decree characterized the report as being speculative and dependent on future plans and possibilities which may or may not become reality. On this premise the court decreed that the rezoning was arbitrary and capricious and set it aside.

In Grund v. Jefferson County, 291 Ala. 29, 277 So.2d 334, this court held that the statute that grants the power to zone and rezone, Code of Ala., Vol. 14B, Appendix § 970, does not require the zoning authority to make studies with regard to the impact of the proposed rezoning on the morals, health, safety and welfare of the county, although the record showed there, as in the present case, that studies and investigations had been made.

The responsibility imposed by the final decree on the Commission, as a requisite to rezone, that is, "to afford the individual property owners and the public generally every convenience and protection the government should guarantee its citizens," is vague and uncertain as to what the government should guarantee its citizens in the way of every convenience and protection. The phrase is susceptible of and provokes a variety of thought on what the government should do for individual property owners and the public generally in order to accomplish rezoning.

Aside from being vague and uncertain in meaning, the requirements, imposed on the Commission for rezoning, go beyond those imposed by the legislature in delegating this legislative authority to the Commission. See Code of Ala., Vol. 14B, Appendix § 970, which provides:

"Grant of power.—For the purpose of promoting health, safety, morals, or the general welfare of the county, the governing body of any county having a population of 400,000 inhabitants or more according to the 1940 or any succeeding decennial federal census, (herein called the 'county'), is hereby empowered to regulate and restrict the use and construction of buildings, structures and land for trade, industry and residence; and to establish setback lines for buildings and structures along the roads and streets in the unincorporated areas of the county including all areas within the police jurisdiction of any incorporated municipality even the area within the police jurisdiction of a municipality over which the governing body of such municipality is exercising zoning jurisdiction and control when this amendment becomes effective; * * *"

We think that under the above statute, if the rezoning is done for the purpose of promoting health, safety, morals, or the general welfare of the county, the Commission is duly authorized to act in that direction. When it acts pursuant to its legislative authority, the Commission's action is likened to the legislature's acting, and the courts should be slow to set aside

that legislative action by substituting their views on the subject. The powers of the three branches of government must be kept separate and inviolate. Art. 3, § 43, Constitution of Alabama, 1901.

In Ball v. Jones, 272 Ala. 305, 310, 132 So.2d 120, 123, the court aptly recognized judicial limitations where zoning has been accomplished by duly authorized bodies. It made the following observation:

"The limitation of judicial review grows out of the character of the proceedings involved. That the enactment of zoning ordinances is a legislative function and not a judicial one is well established and should need little citation of authority. * * * "

We are mindful that in Allen v. Axford, 285 Ala. 251, 231 So.2d 122, this court said:

"* * * [T]he right of a governing body to enact zoning ordinances is not unlimited, and the ordinance must bear some substantial relation to the public health, safety, morals, general welfare, and general convenience. Grayson v. City of Birmingham, 277 Ala. 522, 173 So.2d 67; Marshall v. City of Mobile, 250 Ala. 646, 35 So.2d 553."

We also observe in the same decision, Allen, supra, that the court further stated:

"* * * Counsel for appellants set forth the principle well established in our decisions that if the question of zoning or rezoning is fairly debatable, a court will not substitute its judgment for that of the municipal government body acting in legislative capacity. See Episcopal Foundation of Jefferson County v. Williams et al., 281 Ala. 363, 202 So.2d 726; Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388. * * * "

In Marshall v. City of Mobile, 250 Ala. 646, 649, 35 So.2d 553, 555 (1948), the court said:

"* * * The courts recognize that in the passing of such general zoning or-dinance, the municipal authorities act in a legislative capacity, and that their superior opportunity to know and consider the varied and conflicting interests involved, to balance the burdens and the benefits, to lay out zoning districts with a view to the general welfare of the city, render the courts slow to set up their own opinions as against those charged with and in position to rightly perform such duty. Before the courts will interfere, it must be made to appear that such an ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat."

Again:

"* * * Every intendment is to be made in favor of the zoning ordinance and the matter was largely in the legislative discretion of the municipal authorities. * * *." Marshall, supra, p. 650, 35 So.2d p. 556.

Again:

"Here the city Commission is acting in the exercise of a legislative function and with a wide degree of discretion. * * *." Marshall, supra, p. 651, 35 So.2d p. 557.

After repeating what it said in Marshall, supra, the court, in Ball v. Jones, 272 Ala. 305, 314, 132 So.2d 120, 128 (1961) stated:

"* * * The legislative function with the right of the legislative body to determine the wisdom and propriety of the matter, its superior opportunity to know the needs of the community, and the policy of legislative acts are within the power of the legislative body and the enactment and review of a zoning ordinance, except as hereinabove shown, is a thing apart from the judicial function. Hence, the statute seeking to impose upon the circuit court a non-judicial function, a matter exclusively within the power and discretion of the legislative body of the city, cannot be conferred on the judicial branch of government."

Then in Waters v. City of Birmingham, 282 Ala. 104, 209 So.2d 388 (1968), the court held that:

"Further, if the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly debatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity. Leary v. Adams, 226 Ala. 472, 147 So. 391; Episcopal Foundation of Jefferson County v. Williams [281 Ala. 363, 202 So.2d 726], supra."

■ So here, the question is: Was there presented to the Commission a debatable issue as to whether or not the rezoning was for the purpose of promoting health, safety, morals, or the general welfare of the county? If it was, then the court ought not to interfere in the matter.

In Cudd v. City of Homewood, 284 Ala. 268, 271, 224 So.2d 625, we said:

"The word 'debatable' means, 'Liable to be debated; disputable; subject to controversy or contention; open to question or dispute.' Webster's New International Dictionary, 2d Ed. (Unabridged). * * *"

The findings of the Commission, made after hearings before it, and after an inspection of the subject property by the commissioners, resolved, in favor of the rezoning ordinance, issues of fact that were presented by the opposing sides on the question of whether or not the rezoning would promote the health, safety, morals, or the general welfare of the county.

In Grund v. Jefferson County, 291 Ala. 29, 277 So.2d 334, the court saw fit to affirm the Commission's rezoning of approximately nine acres from its prior classification of E–2 (Estates) to C–1 (Commercial), permitting a neighborhood shopping center immediately across Rocky Ridge Road from the subject property, and approximately thirty-two acres, which surrounded the shopping center, to a classification of R–4 (Multiple Dwellings), permitting the construction of luxury apartments. The same contentions in substance that are made here were made in that case, namely, that the action of the Commission is discriminatory, confiscatory, arbitrary and capricious, bears no relationship to the health, safety, welfare or morals of the county and violates constitutional rights. There the trial court upheld the validity and constitutionality of the zoning ordinance and held that the action of the Commission was not arbitrary and capricious.

In Grund, supra, the trial court found that a debatable issue existed, and, in affirming, this court said:

"A public hearing was had at which persons who were opposed to the proposed rezoning expressed their views to the Jefferson County Planning and Zoning Board. Additionally, written petitions and briefs were submitted on behalf of these persons. Further, two of the three members of the County Commission made personal visits to the site of the proposed rezoning. Respondent, United States Steel, made a presentation to the Planning and Zoning Board as to the results of its investigations, which included investigations as to the adequacy and availability of municipal services at the site of the proposed rezoning.

"After extensive debate on the proposed rezoning, the Jefferson County Planning and Zoning Board unanimously recommended the rezoning, and this recommendation was unanimously adopted by the Jefferson County Commission. Upon the record before us, we could hardly hold that this action was arbitrary and capricious as contended by complainants."

We fail to perceive how the action taken before the Commission in that case presents any greater or any more clearly debatable issue on whether or not the rezoning would promote the health, safety, morals, or general welfare of the county than the action taken by the conflicting interests in this case.

█ Without alluding to the details of the evidence in the lengthy transcript, which we have read in its entirety, we are satisfied from our study of the record that there is evidence in the record from which we conclude that a debatable issue was presented as to whether or not the rezoning will serve to promote the general welfare of the county. There was evidence that the population in metropolitan Birmingham and in its environs was rapidly increasing and that in the area of the rezoning and nearby there were school facilities, that the subject property was served by water and sewer lines, that there was adequate drainage, that widening Rocky Ridge Road was under consideration, that police and fire protection was good, and that the subject property had good highway access to Birmingham's business district. These are only some of the factors that the Commission might have considered from the evidence in concluding that it would promote the general welfare of the county to rezone the property. With this evidence before the Commission, we are unwilling to say that it was not a debatable issue that the rezoning be effectuated.

The trial court erred in holding that the action of the Commission in rezoning the property was arbitrary and capricious. The final decree of that court and the judgment entered thereon is reversed and the cause is remanded.

Reversed and remanded.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and JONES, JJ., concur.