The trial court correctly held that this second suit is barred under the doctrine of res judicata because the Crofts should have included in their first lawsuit any claim they may have had against Pate for wrongful interference with a settlement agreement.
I briefly state the basic facts to show why I believe that the principles of res judicata apply:
1985 The Crofts buy the subject lot.
January 1987 The Crofts enter into a contract with Davis to build a house on the lot.
February 18, 1987 The Crofts transfer the lot to Davis to allow Davis to use it as collateral for a construction loan he obtains from First Alabama Bank.
March 9, 1987 Davis executes a mortgage to First Alabama Bank.
 The Crofts and Davis have disagreements over the construction of the house, and both hire lawyers.
September 1987 The lawyers negotiate a settlement agreement (the subject matter of this appeal), under which Davis would pay the Crofts $23,500.
 Davis talks to Pate about purchasing the house and lot and having Davis complete the house. (Note: According to testimony in this case, at some point Pate told Davis that Davis was "crazy" to agree with the Crofts to settle the controversy. See "February 1988," infra).
 Davis threatens the Crofts with a lawsuit and with bankruptcy. *Page 802 
December 1987 Davis defaults on the loan with First Alabama Bank, and First Alabama Bank forecloses on the mortgage.
December 30, 1987 Pate purchases at the foreclosure sale, paying a small sum more than the amount bid by First Alabama Bank.
February 1988 Pate discusses with the Crofts' lawyer the possibility of the Crofts' repurchase of the house, provided Pate is guaranteed a profit. According to testimony of the Crofts' lawyer, it was during this conversation that Pate related that he (Pate) had told Davis that Davis would have been "crazy" to enter into the settlement worked out by the lawyers (the settlement that forms the basis for this lawsuit, which was never consummated).
February 12, 1988 The Crofts file the first suit against Pate, in which they seek to redeem the property from him. Pate objects to the redemption on the ground that the Crofts do not have a right of redemption.
April 18, 1988 The trial court grants Pate a summary judgment in the case in which the Crofts sought to redeem the property. The Crofts do not appeal.
May 30, 1989 The Crofts filed the instant lawsuit against Pate, in which they claim that Pate wrongfully interfered with the settlement agreement with Davis.
June 28, 1990 The trial court grants Pate's motion for summary judgment, and the Crofts appeal.
The Crofts argue that their first suit against Pate was a suit to redeem, and that this claim for wrongful interference with the settlement need not have been filed at the time they filed the first suit and therefore is not barred. The majority agrees with them, and reverses the judgment of the trial court. I cannot accept the Crofts' argument and the majority's holding as correctly stating the law of the case; therefore, I must dissent.
The Crofts do not assert that they were not aware of the present cause of action at the time of the previous litigation. In fact, the evidence is undisputed that they were aware of the alleged interference prior to the time of the filing of the first action. In his deposition, the Crofts' lawyer in the first litigation testified as to the basis of the alleged interference with the settlement agreement and when he was aware of it.[1] *Page 803 
I recognize, of course, that the first action filed by the Crofts against Pate sought only equitable relief, and that this second suit is a tort action in which the Crofts seek damages, but that does not have consequential effect. Prior to the adoption of the Alabama Rules of Civil Procedure, the principle of res judicata may have been inapplicable, but the distinction between law and equity has been abolished and there is now only one form of action. Aldridge v. Grund, 293 Ala. 333,302 So.2d 847 (1974), cert. denied, 421 U.S. 1007, 95 S.Ct. 2411,44 L.Ed.2d 676 (1975); Rule 2, Ala.R.Civ.P. Consequently, I cannot accept the Crofts' argument that, because the first action was one to redeem, an action seeking equitable relief, and this action is a tort action in which damages are sought, res judicata does not apply.
The principal issue in the first case was whether, because of Pate's wrongful conduct, the Crofts should have been allowed to redeem, and it is clear that, while the first suit was pending, the Crofts knew of all the facts and circumstances that form the basis of the instant claim, because their attorney testified that he had talked to Pate (see footnote 1) and also because he wrote the following letter to the trial judge in the first action:
"Dear Judge Karrh:
 "This letter is written in opposition to David Carroll's motion for summary judgment in this case.
 "The pertinent facts in this matter are as follows: Tommy and Regina Croft contracted with Skipper Davis Construction Company (S.D.) to build a house on a lot they owned on Lake Tuscaloosa. The Crofts had bought the lot in 1985 for $21,500.00 and had made improvements to it. After the construction contract was entered into, S.D. asked the Crofts to deed the lot to it so that the lot could be pledged as security for a construction loan to be obtained by S.D. The Crofts agreed to do so, S.D.'s attorney prepared the deed, and the Crofts signed it. No consideration was given by S.D. to the Crofts. This action by the Crofts was certainly not wise, but no 'fault' attaches to it which would bar them from equitable relief.
 "S.D. obtained a construction loan from First Alabama Bank, and the bank took a mortgage on the property to secure it. When the house was about 85% complete, the Crofts and S.D. got into a dispute about the construction of the home. S.D. defaulted on the loan and First Alabama foreclosed on the mortgage. The defendant in this case, Stan Pate, bought the property at the foreclosure sale. Mr. Pate had knowledge of the situation between S.D. and the Crofts at the time he purchased the property.
 "Clearly, the Crofts are entitled to a finding that the deed to S.D. was not an absolute deed and is due to be canceled, or else to a finding that a constructive trust or resulting trust exists on the *Page 804 
property with themselves as beneficiaries. However, unless they are allowed to step into S.D.'s shoes and redeem the property from Mr. Pate, they have no means to enforce their clear equitable interest in the property.
 "Mr. Pate has no cause to complain. In the first place, he purchased at a foreclosure sale and knew the property was subject to redemption. At the time, he knew of the dispute between the Crofts and S.D., including the transfer of the property by the Crofts to S.D. for no consideration. And, finally, if redemption is allowed, the Crofts will have to pay him the purchase price, interest, the value of his improvements to the property, etc. Mr. Pate stands to lose nothing upon redemption.
 "The Crofts come before the Court in this case asking for equitable relief. If relief is not granted, they lose the one asset they have worked and saved for years to acquire. If relief is granted, no one is injured.
"Sincerely,
"s/Joseph G. Pierce"
In their complaint in this case, the Crofts set out the same basic facts which are contained in their lawyer's letter to the trial judge in the first case, and then they allege that "[a]ll of this was part of a conspiracy by Stan Pate and Skipper Davis to deprive the plaintiffs of the benefit of their settlement agreement this was part of a conspiracy by Stan Pate and Skipper Davis to deprive the plaintiffs of the benefit of their settlement agreement and resulted not only in depriving them of their settlement agreement, but also deprived them of their property."
It is quite obvious from a reading of the argument made in the first lawsuit in opposition to a summary judgment motion, and from a reading of the argument made in this case, that the two actions involve the same parties and the same subject matter and that the right of the Crofts to relief, whether equitable or legal, is based upon the same facts and circumstances. The second suit is nothing more than an alternative claim for relief that should have been asserted in the first action. It should be barred. Sullivan v. WaltherBuilders, Inc., 495 So.2d 655 (Ala. 1986).
HOUSTON and INGRAM, JJ., concur.
[1] "Q. Did you subsequently file a lawsuit in Tuscaloosa County on behalf of the Crofts against Mr. Pate?
 "A. I filed a lawsuit to basically ask the Court to allow the Crofts to redeem the property from Mr. Pate. It was a suit for redemption.
 "Q. Joe, let me show you what's been marked as Defendant's Exhibit 1, a lawsuit that was filed apparently February 12th, 1988. Is that —
"A. That's a copy of the lawsuit we filed at that time.
 "Q. Would the meeting that you had with Mr. Pate have been prior to that lawsuit being filed?
 "A. Right. Because this was actually filed on February 12th of '88.
 "Q. And would the letter that you wrote to him subsequent to meeting him been also prior to that suit being filed?
"A. Right.
 "Q. I think you said a minute ago 10th or 11th. Does that seem right in relation to that being filed on the 12th?
"A. Yes.
"Q. It was that close in time?
"A. Right.
". . . .
 "Q. Did you have any further conversations with respect to the house after that, not with respect to what might have been confused about the letter or his subsequent phone call or anything like that but with respect to the house? Did you have any subsequent conversations?
"A. I don't remember any.
 "Q. Now, did you ever become aware of anybody claiming that Mr. Pate somehow was involved in the settlement negotiations between Skipper Davis Construction and the Crofts?
 "A. Well, my memory is that when Stan Pate came to my office to talk about what he would be willing to do [in regard] to letting the Crofts buy the house from him or reacquire it, he made the statement that he had told Skipper Davis that he shouldn't go through with the agreement that he had with the Crofts.
"Q. Do you know when he told Skipper Davis that?
 "A. I don't know of a date. That was a statement that Mr. Pate said in our conversation that day he came to my office.
 "Q. You didn't go into specifics about when he may have said that to Skipper Davis?
 "A. Well, I assume — I don't know, David. I assume that it was before the foreclosure but I don't know exactly when that was.
 "Q. Did he say this was before the settlement was called off or did he just say he told Skipper that it was a bad idea to go through with the settlement, do you recall?
 "A. My memory is that he said something to the effect that he had told Skipper he was crazy to do it and shouldn't do it. But I don't know when he told Skipper that.
 "Q. So, you don't have any knowledge as to when it was told to Mr. Davis if it was?
"A. I don't have any personal knowledge.
 "Q. Other than from Mr. Pate, have you heard that from anybody else?
"A. No.
 "Q. And so the only time you would have been aware of it was when he told you —
"A. That's right.
 "Q. — on that visit to your office on whatever day or two before this lawsuit was filed?
"A. Right, in February, right.
". . . .
 "Q. And just, again, so I'm clear, the only knowledge you have of Mr. Pate possibly being involved with the settlement discussions was the one statement he made to you at your office on roughly February 10th or 11th?
 "A. Right. That's my only contact with Stan Pate concerning settlement negotiations.
". . . .
 "Q. That suit marked Exhibit 1 was between Tommy Croft and Regina Croft and against Stan Pate?
"A. Right.
"Q. And involved the house at Lake Hills North?
 "A. Right. It asked the Court to allow the Crofts to redeem the property from Mr. Pate."