THIGPEN, Judge.
This is a zoning ease.
Following a public hearing, the members of the City Council of Union Springs (Council) voted to adopt Ordinance No. 339, rezoning certain property on Conecuh Street (subject property) from a low density residential classification (R-l) to a highway commercial classification (B-3). Thereafter, the Bullock County Historical Society and others (Bullock) sued the City of Union Springs, and the mayor and City Council of Union Springs in their official capacities (City), seeking, inter alia, a judgment declaring that the actions of the Council in adopting Ordinance No. 339 were arbitrary, capricious, and invalid. After an ore tenus proceeding, the trial court rendered a judgment holding that the Council’s action in adopting Ordinance No. 339 was not arbitrary and capricious and, therefore, that it was not palpably wrong. Bullock appeals and, in essence, contends that the action of the Council in rezoning the subject property was arbitrary and capricious.
The scope of review in a zoning case is aptly set out in Homewood Citizens Association v. City of Homewood, 548 So.2d 142, 143-44 (Ala.1989), as follows:
“When a municipal body acts either to adopt or to amend a zoning ordinance, it acts in a legislative capacity and the scope of judicial review of such action is quite restricted. The restricted role in reviewing the validity of a zoning ordinance or regulation has been stated as follows:
“ ‘Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debat-' able, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
“ ‘In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws.’ [Citations omitted.]
“The standard of review used to determine whether a zoning ordinance is arbitrary and capricious was stated by this court in City of Tuscaloosa v. Bryan, 505 So.2d 330, 336 (Ala.1987):
“ ‘If the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly debatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity.’
“The burden is upon the party seeking relief from an ordinance to show that the ordinance was not a fairly debatable issue before the municipal governing body.” (Citations omitted.)
Furthermore, when evidence is presented ore tenus, a trial court’s judgment based on findings of fact supported by that evidence is presumed correct and will not be reversed unless the judgment is found to be plainly and palpably wrong. Orkin Exterminating Co. v. Etheridge, 582 So.2d 1102 (Ala.1991).
The record revealed that the subject property, consisting of 24 lots, was classified R-l prior to the rezoning, and that it is located near properties whose zoning classifications range from R-l to M-2 (general *1217 industrial). The B-3 classification falls between the R-l and M-2 classifications. The record also revealed that a laundry and a law office were located within the subject property; that it was adjoined by properties on which a service station and a fast-food restaurant were located; and that it was near land other small businesses were operated on.
Prior to the adoption of Ordinance No. 339 in September 1991, two separate requests for the rezoning of certain lots within the subject property to B-2 (central business district) classification had been considered and denied by the Council. Following the denial of the second rezoning request, the Council requested the South Central Alabama Development Commission (SCADC) to conduct a study concerning the pattern of B-3 development and the short supply of available land zoned B-3. After reviewing that study, the Council voted on June 17,1991, to request the Union Springs Planning Commission (Commission) to consider recommending that the subject property be rezoned to B-3.
On June 26, 1991, Greg Smoker, a potential purchaser, requested the Commission to rezone a portion of the subject property from R-l to B-3. At a meeting in July 1991, the Commission allowed public comments concerning the proposed rezoning of the subject property. Thereafter, the Commission agreed to recommend to the Council that all of the subject property be rezoned to a B-3 classification. The Council also held public hearings on the rezoning issue, and it thereafter voted to rezone the subject property to the B-3 classification.
In its study, the SCADC identified three broad policy options available to the Council: 1) actively encourage further highway commercial development; 2) actively discourage further highway commercial development; or 3) neither encourage nor discourage further highway commercial development. Under Option 1, SCADC suggested that one possible approach would involve “amending the zoning ordinance to rezone land suitable for highway commercial use to B-3 according to an adopted plan.” Furthermore, SCADC suggested that the Council prepare and adopt a highway commercial land use plan and amend the existing ordinance to reflect that plan.
At trial and on appeal, Bullock stressed the historical significance of the existing houses on the subject property. SCADC’s study suggested that the Council consider such factors as historical significance by consulting an “impartial, qualified expert” prior to making a decision regarding possible rezoning.
“An impartial expert would assess the need to preserve specific sites based on generally accepted principles of design, uniqueness, associated historic events and such, and would not apply across-the-board criteria used by some evangelistic preservationists, such as ‘every stately structure should be preserved’, and ‘every structure over 50 years old should be preserved.’ ”
SCADC study, p. 32, n. 11.
Finally, SCADC recommended the following:
“6. If the City opts not to prepare and adopt a highway commercial land use plan and to amend the zoning ordinance and map accordingly, and/or not to designate the area as historic, it is recommended that parcels along Co-necuh between Martin Luther King Blvd and Peachburg Road be rezoned B-3 when requested, with adequate buffering of adjoining residential uses. “The following observations, subject to systematic confirmation if deemed appropriate, support this recommendation:
“1) Compared to the surrounding area, several dwellings on this segment of Conecuh appear to be in a state of neglect, with little evidence that deterioration is being contained;
“2) The community has not taken formal action to have the Union Springs Historic Residential Area designated by the State or Federal governments;
“3) There appears to be adequate land for residential use along streets lacking the traffic volume needed to support highway commercial development;
*1218 “4) Should the land uses on this street segment continue as they are, and code enforcement or other incentives to improve and properly maintain existing residential properties not be undertaken, the result most likely will be further deterioration and blight; and,
“5) Rezoning parcels in this area to B-3 should result in a reversal of deterioration and blight. This would occur as the result of basically sound structures being brought to code and used for commercial purposes, and unsound structures being removed and the property then used for commercial purposes.”
SCADC study, p. 33 (emphasis original).
Don Segrest, the city administrator and building inspector for Union Springs, testified that he inspected the subject property and the houses located thereon. Segrest testified that there were nine vacant houses on the subject property and, of those nine, most were beyond repair. In fact, Segrest stated on cross-examination that he had received requests from neighbors that one of these vacant houses be condemned, although no formal proceedings had been instituted.
Bullock also contends, inter alia, that the Council’s decision to rezone the subject property to B-3 was arbitrary and capricious because- the Council did not obtain various traffic and urban planning studies. We note that the Council considered the SCADC study, although there is no legal requirement that such studies be performed. See Aldridge v. Grund, 293 Ala. 333, 302 So.2d 847 (1974).
The record reveals that the issue of rezoning was represented and contested ardently by both sides, and that public hearings were held before the Commission and the Council, with neither entity voting unanimously. In its order, the trial court stated the following:
“What the City Council ... did in this case constitutes a classic example of the type of balancing act that legislative bodies must, of necessity, engage in. The City Council attempted to and appears to have struck a balance between those ‘evangelistic preservationists’, who would seek to preserve historic structures at any cost, and the needs and well-being of all of the other citizens of the City of Union Springs who will benefit from the type of controlled commercial development which the action of the City Council will make possible within the subject property. Even though this Court may agree in principle with the Plaintiffs’ opinions about the use of the property, this Court cannot, under the law, substitute its judgment for that of a legislative body. Accordingly, this Court finds that the action of the City Council ... in adopting Ordinance No. 339 was not arbitrary and capricious and that their decision with regard to this ordinance was not palpably wrong.”
We cannot say, after considering the evidence and the reasonable inferences it would support, that the trial court’s judgment is plainly and palpably wrong. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J„ concur.