CRAWLEY, Judge,
dissenting.
I respectfully dissent. Under the highly deferential “fairly debatable” standard of review, I would affirm the circuit court’s judgment.
As the majority notes, our supreme court first set out the standard of review applicable to such decisions in City of Tuscaloosa v. Bryan, 505 So.2d 330 (Ala.1987), in which it stated:
“This case involves a question of first impression in this state, and that question is: What is the scope of judicial review of a municipality’s action in approving a planned unit development? [8]
[[Image here]]
“Our standard of review of the approval of a [planned unit development] application should be the same as our standard of review of the rezoning of an area. In both cases, the ordinance has been adopted. The action reviewed is the change of use of property. In Episcopal Foundation [of Jefferson Co. v. Williams, 281 Ala. 363, 202 So.2d 726 (1967) ], we held that in rezoning an area the standard of review should be whether the reclassification is sound and fair. If it is fairly debatable as to whether the reclassification is sound and fair, the Court will not substitute its judgment for that of the city council.”
505 So.2d at 337. In American Petroleum Equipment & Construction, Inc. v. Fancher, 708 So.2d 129 (Ala.1997), the “fairly debatable” rule was defined as follows:
“The ‘fairly debatable’ rule concerns the application of a zoning classification to a specific parcel of property. Byrd Companies v. Jefferson County, 445 So.2d 239, 247 (Ala.1983). ‘ “[I]f the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts.” ’ Id., quoting Davis v. Sails, 318 So.2d 214[, 217] (Fla.Dist.Ct. App.1975). Thus, if the zoning ordinance is ‘subject to controversy or contention’ or ‘open to question or dispute,’ it is ‘fairly debatable’ and should not be disturbed by the courts. Aldridge v. *149 Grund, 293 Ala. 333, 342, 302 So.2d 847, 854 (1974); Cudd v. City of Homewood, 284 Ala. 268, 271, 224 So.2d 625, 628 (1969).”
708 So.2d at 131.
At the May 3, 2000, meeting of the planning commission, Kevin Cowper, who then served as the planning director of Baldwin County, stated that Paradise’s eastern and western parcels of property were contiguous pursuant to the zoning regulations because they were connected by the private beach easement (which ran east to west between the two parcels along the southern border of the Gulf Highlands property). In response to questions posed by property owners, a representative of Paradise stated that the two parcels of property were contiguous by virtue of the private beach easement, interior streets, and a conservation easement. Members of the association voiced their opinion that the parcels of property were not contiguous; a member of the planning commission who voted against approval of the application also stated that the parcels were not contiguous (two members of the planning commission had voted against the approval of Paradise’s PRD application).
At the June 20, 2000, county commission meeting, the county commission had before it the minutes of the planning commission’s meeting and the recommendation from the planning commission that Paradise’s application be approved. The county commission also heard statements of opinion from the public that the two parcels of property were not contiguous; a member of the planning commission who had voted against Paradise’s PRD application also stated his opinion that the two parcels were not contiguous. The county commission made no written findings when it adopted the resolution approving Paradise’s PRD application.
At trial, Kevin Cowper testified that Paradise’s two parcels of property were contiguous because (1) they were “immediately adjacent”; (2) they were separated from a common border by a series of undeveloped public-street rights of way that ran east to west across the Gulf Highlands property; (3) they were separated from a common border by the private beach easement that ran east to west along the southern border of the Gulf Highlands property; and (4) they were separated from a common border by a conservation easement covering portions of the entire Gulf Highlands property from east to west.
Arthur Bailey duMont, employed as a principal city planner for the City of Mobile, provided expert testimony on behalf of the association concerning the definition of “contiguous.” In testifying concerning the requirement of contiguity in the Baldwin County Zoning regulations, duMont testified as follows:
“Q. In your examination of documents and in your review, did you consider what is meant by that particular section as it relates to contiguousness?
“A. Well, with the exception of the three versus five or ten or twenty in some ordinances [referring to minimum acreage required], development for residential versus maybe some nonresidential, the number three in terms of acres means that you’ve got to have that number, absolute floor minimum, to develop the site. And those three acres have to be contiguous such that they do satisfy the definition of contiguous to be developed.
“Q. And did you consider what the appropriate definition of contiguous [is] as [it] relates to a zoning ordinance?
“A. Yes, I have.
“Q. What did you consider in arriving at your opinion in that regard?
*150 “A. I considered the generic maten-ai on the subject of the definition of contiguous. Also, I looked at—
“Q. Now, you say the generic definition. Are there certain definitions within, say, the planning lingo or within planning circles?
“A. Yes, there are. The American Planning Association has from time to time, and most recently, produced a glossary of zoning terms or definitions of those terms. And among those were ‘contiguous.’ And I consulted that in addition to just the dictionary or the general definitions we discussed earlier. And in addition to that, I just looked on the Internet under the term ‘contiguous’ to see what combination of generally accepted concepts that term embodied by the authors of that combination. So all three of those together are what I consulted, along with the normal usage of the term in working with that in my profession.
[duMont then provided the definitions of contiguous provided by the American Planning Association and from his search of the Internet.]
[[Image here]]
“Q. Any other source that you looked at?
“A. Dictionary, Internet and this was all.”
(Emphasis added.) Thus, duMont testified relying solely on the regulations to the extent that they required a three-acre minimum for development. As to a specific definition of the term “contiguous,” he was questioned about the definition of the term as it related to a zoning ordinance, not specifically to the regulations in question. In response to this question, duMont did not testify concerning the definition provided in the regulations, but to definitions provided in the American Planning Association’s glossary of terms, a dictionary, and to those found on the Internet. Accordingly, I conclude that duMont never stated an opinion as to whether the two properties were contiguous considering only the definition contained in the regulations in question.
The definition of “contiguous” in the zoning regulations contains no requirement that a developer’s properties be separated from a common border by a right of way, alley, or easement that runs parallel to the properties’ borders. The common definition of that term may so require, but the zoning regulations contain their own specific definition, which is silent as to this issue. The definition in the zoning regulations controls, because “contiguous” was defined within the regulations. Accordingly, duMont’s testimony concerning other sources that define the word contiguous was not pertinent to the issue before the circuit court. He did not testify that the two properties were not contiguous applying solely the definition of contiguous contained in the zoning regulations.
A review of the proceedings below further shows that this issue was “open to question and dispute.” Two members of the planning commission voted against Paradise’s PRD application, one of whom voiced his opinion to the county commission; this is also a factor that supports the proposition that whether Paradise’s properties are contiguous pursuant to the zoning regulations is fairly debatable. See H.H.B., L.L.C. v. D & F, L.L.C, 843 So.2d 116, 121 (Ala.2002)(“Under the highly deferential [fairly debatable] standard we must apply in this case, we cannot say that a rezoning request that received a split vote by the planning commission and a split vote by the city council was not reasonably subject to disagreement, that is, not fairly debatable.”).
Accordingly, because I conclude that the county commission’s decision to adopt a *151 resolution approving Paradise’s PRD application was fairly debatable, I would affirm the circuit court’s judgment.
THOMPSON, J., concurs.

8. “The term planned unit development is used ... to refer to a planned development, particularly a planned residential development....” Kenneth H. Young, 2 Anderson’s American Law of Zoning § 11.13 (4th ed.1996).